# Matter of C-T-L-, Respondent

*Decided September 14, 2010*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The "one central reason" standard that applies to asylum applications pursuant to section 208(b)(1)(B)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)(B)(i) (2006), also applies to applications for withholding of removal under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A) (2006).

FOR RESPONDENT: Jaspreet Kalra Singh, Esquire, New York, New York[1]

FOR THE DEPARTMENT OF HOMELAND SECURITY: Grace H. Cheung, Assistant Chief Counsel

AMICI CURIAE: Michael M. Hethmon, Esquire; Joseph C. Hohenstein, Esquire; Paul O'Dwyer, Esquire; and Stephen W. Manning, Esquire, Washington, D.C.[2]

BEFORE: Board Panel: GRANT, MALPHRUS, and MULLANE, Board Members.

MALPHRUS, Board Member:

In a decision dated October 5, 2006, an Immigration Judge denied the respondent's applications for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), and ordered him removed from the United States. We dismissed the respondent's appeal from that decision on January 7, 2008. The matter is now before us on remand from the United States Court of Appeals for the Ninth Circuit. Both parties and

---

[1] Although the respondent's former attorney has been suspended from practice before the Board, the Immigration Court, and the Department of Homeland Security, his suspension was not in effect at the time he filed a brief in April 2009, so we have considered the arguments set forth in that brief.

[2] We acknowledge and appreciate the very helpful briefs submitted by the parties and by amici curiae, the American Immigration Lawyers Association and the Federation for American Immigration Reform, Inc.

amici curiae have filed briefs.[3]    The respondent's appeal will again be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Brazil who was admitted to the United States as a nonimmigrant visitor in 1995. He was served with a Notice to Appear (Form I-862) dated January 24, 2006, charging him with marriage fraud under section 237(a)(1)(G)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(G)(i) (2006). At proceedings before the Immigration Judge on June 28, 2006, the respondent conceded removability and applied for asylum, withholding of removal under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A) (2006), and protection under the Convention Against Torture. Accordingly, these proceedings are governed by the provisions of the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302 ("REAL ID Act"). *See Matter of S-B-*, 24 I&N Dec. 42 (BIA 2006).

The respondent sought relief based on three separate incidents. First, he expressed a fear of a former employer, a businessman and politician whom the respondent had criticized during the 1980s for the employer's involvement in the death of an American citizen. Second, after the respondent had relocated during the early to mid-1990s, he was involved in the business of registering automobiles with a government agency and was approached by police officers to participate in a blackmail scheme. The respondent reported the officers' scheme to the authorities, who disciplined and suspended the rogue officers for 2 months, and he later appeared on television to expose the officers' wrongdoings. Third, while in the United States, after being solicited by a drug dealer to engage in illegal activities, the respondent assisted law enforcement authorities in apprehending the dealer.

The Immigration Judge found the respondent to be credible, but she denied his application for asylum because he failed to file for relief within a year after the date of his arrival in the United States, as required by section 208(a)(2)(B) of the Act, 8 U.S.C. § 1158(a)(2)(B) (2006). The respondent demonstrated no changed or extraordinary circumstances to excuse the delay. *See* section 208(a)(2)(D) of the Act; 8 C.F.R. §§ 1208.4(a)(4), (5) (2010). In addition, the Immigration Judge denied the respondent's request for withholding of removal, also referred to as restriction from removal, finding that he did not show that there was a nexus between the harm he fears and one of the protected grounds specified in the Act. Finally, the Immigration Judge

---

[3] After amici curiae submitted their briefs, the Department of Homeland Security ("DHS") filed a motion to accept its supplemental brief. The DHS's unopposed motion will be granted. We have also accepted the respondent's supplemental brief, which was filed on August 6, 2010.

determined that the respondent did not establish that he should be granted protection under the Convention Against Torture.

In dismissing the respondent's appeal, we stated that he was unable to demonstrate that either his political opinion or his membership in a particular social group was a "central reason" for any feared persecution, as required by section 208(b)(1)(B)(i) of the Act. On November 19, 2008, the Ninth Circuit granted the Government's unopposed motion to remand these proceedings to determine whether section 208(b)(1)(B)(i) applies to applications for withholding of removal under section 241(b)(3)(A).

In the motion, the parties acknowledged that although the respondent did not contest the applicability of the REAL ID Act to his request for withholding of removal, there was no developed or meaningful discussion by the parties addressing the applicability of the "one central reason" standard to withholding of removal claims. Thus, the record was remanded for us to "bring [our] expertise to bear upon the matter . . . through informed discussion and analysis." *INS v. Orlando Ventura*, 537 U.S. 12, 17 (2002).

## II.  ANALYSIS

### A.  REAL ID Act Amendments

Section 208(b)(1)(A) of the Act provides that a "refugee" is eligible for asylum. That term is defined in section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42) (2006), as including a person who has been persecuted or who has a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." *See also INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987). An alien who demonstrates past persecution or a well-founded fear of future persecution is eligible for asylum, subject to a discretionary determination. *Id.* at 423, 428 nn. 5-6. This standard is a broader one than that used to demonstrate eligibility for withholding of removal. *Id.* at 423-24.

Eligibility for withholding of removal requires a showing that the alien's life or freedom would be threatened "because of . . . race, religion, nationality, membership in a particular social group, or political opinion." Section 241(b)(3)(A) of the Act. Thus, to establish eligibility for withholding of removal, an alien must show that there is a clear probability of persecution, or stated differently, that it is more likely than not that he or she would be subject to persecution. *INS v. Stevic*, 467 U.S. 407, 424 & n.19 (1984). We view the "clear probability" standard to be equivalent to, and interchangeable with, the "more likely than not" standard for purposes of withholding of removal. *See id.* at 429-30. *See generally* 8 C.F.R. §§ 208.16(b), 1208.16(b) (2010).

The REAL ID Act amended section 208(b)(1) of the Act by addressing the required burdens of proof. One of the amendments provides that an asylum applicant must "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason" for the persecution. Section 208(b)(1)(B)(i) of the Act (emphasis added). We apply this standard in asylum proceedings to so-called "mixed motive" cases. *Matter of J-B-N- & S-M-*, 24 I&N Dec. 208 (BIA 2007).[4]

The REAL ID Act amendments also addressed other burden of proof issues concerning credibility and corroboration. *See* sections 208(b)(1)(B)(ii), (iii) of the Act. Section 241(b)(3)(C) of the Act explicitly states that these amendments apply to applications for withholding of removal:

> In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 208(b)(1)(B).

However, the Act does not expressly provide whether the "one central reason" standard in section 208(b)(1)(B)(i) of the Act applies in the context of withholding of removal. Thus, this matter has been remanded for us to determine the appropriate burden of proof standard for withholding of removal applications. *See Negusie v. Holder*, 129 S. Ct. 1159, 1164 (2009).

## B. Statutory Construction and Congressional Intent

In deciding this issue, we employ settled principles of statutory construction. "Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Issues regarding whether the language is plain and unambiguous are "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. Thus, we first "look to the particular statutory language at issue." *K-Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

Section 241(b)(3)(C) of the Act specifically addresses "burden of proof" and "credibility determinations" and does so by cross-referencing, and thus incorporating, sections 208(b)(1)(B)(ii) and (iii) of the Act. However, section 241(b)(3)(C) does not expressly cross-reference section 208(b)(1)(B)(i),

---

[4] The Ninth Circuit adopted our interpretation of the meaning of "one central reason" in *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009).

which, as noted above, was also part of the amendments made by the REAL ID Act and set forth the "one central reason" standard. Thus, section 241(b)(3)(C) is silent regarding whether that standard is applicable to withholding of removal claims.

The respondent contends that Congress's failure to expressly make the "one central reason" standard applicable to the withholding of removal provision must mean that it did not intend for that standard to apply. However, in statutory construction, "silence is not conclusive." *Negusie v. Holder*, 129 S. Ct. at 1164. We are instructed not to view the language of statutory provisions in isolation but instead are charged with reading the words "'in their context and with a view to their place in the overall statutory scheme.'" *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Matter of Moncada*, 24 I&N Dec. 62, 64 (BIA 2007). We are also "guided to a degree by common sense" as we "interpret the statute 'as a symmetrical and coherent regulatory scheme'" and "'fit, if possible, all parts into an harmonious whole.'" *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. at 133 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995), and *FTC v. Mandel Brothers, Inc.*, 359 U.S. 385, 389 (1959)); *see also Matter of Moncada*, 24 I&N Dec. at 65.

In applying these principles, we begin our analysis by examining the intent and purpose of the REAL ID Act amendments regarding the burden of proof, which were a direct response to inconsistent asylum law in the courts of appeals. Congress recognized that these courts had developed different standards on the "mixed motive" issue. H.R. Rep. No. 109-72, at 163 (2005) (Conf. Rep.), *as reprinted in* 2005 U.S.C.C.A.N. 240, 289, 2005 WL 1848528 (citing *Ambartsoumian v. Ashcroft*, 388 F.3d 85, 91 (3d Cir. 2004) (discussing an applicant's failure to show persecution where police harassment was "mainly because he had failed to obtain proper legal documents and permissions," not on account of ethnicity); *Useinovic v. INS*, 313 F.3d 1025, 1033 (7th Cir. 2002) (finding no showing of persecution where robbery "was primarily aimed at [the alien] personally" and not at a theft of valuables); and *Girma v. INS*, 283 F.3d 664, 668 (5th Cir. 2002) (affirming the Board's finding of no persecution in a mixed motive case because "the harm suffered was [not] motivated in meaningful part by a protected ground")). In enacting the REAL ID Act amendments, Congress sought to clarify the "mixed motive" standard and provide a "uniform standard for assessing motivation." *Id.* at 163; *see also Matter of J-B-N- & S-M-*, 24 I&N Dec. at 214.

Specifically, Congress set out to address an "anomaly in the law" that it said was "created by the Ninth Circuit." H.R. Rep. No. 109-72, at 163. Congress was critical of the Ninth Circuit's decisions in *Borja v. INS*, 175 F.3d 732 (9th Cir. 1999), and *Briones v. INS*, 175 F.3d 727 (9th Cir. 1999), saying that they "substantially undermined a proper analysis of mixed motive cases"

by weakening the standard regarding motivation for persecution that the alien was required to show. H.R. Rep. No. 109-72, at 163; *see also Matter of J-B-N- & S-M-*, 24 I&N Dec. at 214 n.9.[5] It also noted that the Ninth Circuit's approach to motivation "improperly favors asylum applicants who claim that they have been accused of engaging in terrorist, militant, or guerilla activity." H.R. Rep. No. 109-72, at 163-64.

Prior to the enactment of the REAL ID Act, we consistently applied the nexus requirement in the same manner to withholding of removal cases as we did in asylum cases. *See, e.g.*, *Matter of A-M-*, 23 I&N Dec. 737, 739 (BIA 2005); *Matter of V-T-S-*, 21 I&N Dec. 792, 796 (BIA 1997); *Matter of T-M-B-*, 21 I&N Dec. 775, 780 (BIA 1997), *rev'd on other grounds*, *Borja v. INS*, 175 F.3d 732. There is no indication that Congress intended to change this approach that we had traditionally applied when it passed the REAL ID Act. In fact, all indications are that Congress intended to apply the "one central reason" standard uniformly to both asylum and withholding claims, as the Department of Homeland Security and the American Immigration Lawyers Association discuss in their briefs.

We see no reason to now treat withholding of removal claims differently for cases subject to the REAL ID Act amendments. Applying this standard to withholding claims has two distinct practical advantages. The first is that it will avoid the application of the different standards adopted by the courts of appeals in "mixed motive" cases. Congress envisioned that a single national standard would apply to all applicants regardless of where the proceedings arose.

The second is that the burden of proof standard would be consistent between asylum and withholding of removal claims. There are important distinctions between asylum and withholding of removal. One is the overall burden of proof standard: well-founded fear of persecution for asylum, and clear probability of persecution for withholding of removal. *See INS v. Stevic*, 467 U.S. at 429-30. Other differences include the fact that an asylee can adjust to lawful permanent resident status and sponsor certain other relatives, whereas aliens granted only withholding of removal can remain and work in the United States but cannot adjust status on that basis and cannot extend the status to others. *See, e.g.*, *Gumaneh v. Mukasey*, 535 F.3d 785, 789 (8th Cir. 2008). The existing distinctions are generally straightforward to apply because they involve either basic eligibility criteria or the overarching burden of proof.

---

[5] The Ninth Circuit has recognized the effect that the REAL ID Act amendments have had on its earlier precedent, and it has acknowledged the congressional abrogation of some of its case law. *See, e.g.*, *Shrestha v. Holder*, 590 F.3d 1034, 1042 n.3 (9th Cir. 2010); *Aden v. Holder*, 589 F.3d 1040, 1043-45 (9th Cir. 2009); *Parussimova v. Mukasey*, 555 F.3d at 739-40.

Applying a different standard in "mixed-motive" cases to asylum and withholding of removal would create inherent difficulties because it would require a bifurcated analysis on a single subissue in the overall case. An application for asylum necessarily includes the similar but lesser form of relief of withholding of removal. 8 C.F.R. §§ 208.3(b), 1208.3(b) (2010); *see also Matter of Castellon*, 17 I&N Dec. 616, 620 (BIA 1981). Given that an asylum application also includes an application for withholding of removal, applying a different standard would make these adjudications more complex, unclear, and uncertain. On the other hand, applying the same standard promotes consistency and predictability, which are important principles in immigration law.

The legislative history of the REAL ID Act is clear that Congress was dissatisfied with the analysis in *Borja* and *Briones* and attempted to address the disparity in the circuits regarding the proper standard for evaluating the persecutor's motive. It does not make sense to resurrect that disparity for withholding of removal claims. We cannot conclude that Congress would have intended to create such an anomaly. Congress's silence regarding the "mixed motive" application to withholding of removal cases is best understood through the legislative history, which noted a disagreement with cases that arose in the context of asylum, not withholding of removal. Given Congress' criticism of the *Borja* and *Briones* "mixed motive" analysis, we do not attribute its silence on the withholding of removal provision as an intent to preserve the standard applied there in the context of withholding cases. Rather, it appears that, in modifying the asylum standard, Congress believed it had fixed the problem and provided a "uniform standard for assessing motivation" in related forms of relief that generally arise in the same case. H.R. Rep. No. 109-72, at 163. We further note in this regard that section 208(b)(1)(B)(i) of the Act, which codified the "one central reason" standard in the asylum context, refers to the definition of a "refugee" in section 101(a)(42)(A) that an applicant must meet, which is a lesser burden than that required for withholding of removal. Thus it makes sense that, given the different legal standard, section 208(b)(1)(B)(i) would not refer to withholding of removal.

Moreover, because key language regarding motivation in the relevant statutes has the same meaning, adopting two different standards would be unharmonious and asymmetrical. *See Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. at 133; *see also Matter of Moncada*, 24 I&N Dec. at 65. To be eligible for asylum, an alien must qualify as a "refugee," that is, a person who suffered persecution or has a well-founded fear of persecution "*on account of* race, religion, nationality, membership in a particular social group, or political opinion." Section 101(a)(42) of the Act (emphasis added); *see also INS v. Cardoza-Fonseca*, 480 U.S. at 423. An applicant for withholding of removal must demonstrate that

his or her life or freedom would be threatened "*because of*" one or more of the same five reasons. Section 241(b)(3)(A) of the Act (emphasis added); *see also INS v. Stevic*, 467 U.S. 407. The phrases "on account of" and "because of" are equivalent and have been used interchangeably. *See, e.g.*, *INS v. Elias-Zacarias*, 502 U.S. 478, 481-83 (1992).

Indeed, in applying the REAL ID Act, numerous courts have assumed that the standard applies to withholding of removal claims, or they have determined that if asylum is denied where an applicant fails to meet the "one central reason" standard, then the alien's application for withholding of removal necessarily fails as well. *See, e.g.*, *Shaikh v. Holder*, 588 F.3d 861 (5th Cir. 2009); *Dias Gomes v. Holder*, 566 F.3d 232, 234 (1st Cir. 2009); *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164-65 (4th Cir. 2009); *Singh v. Mukasey*, 543 F.3d 1, 5-7 (1st Cir. 2008); *Abdel-Rahman v. Gonzales*, 493 F.3d 444, 453 n.12 (4th Cir. 2007); *Wong de Abanto v. U.S. Att'y Gen.*, 367 F.App'x 993, 996 n.5 (11th Cir. 2010); *Tian Ming Huang v. BIA*, 305 F.App'x 722, 723-24 (2d Cir. 2009); *Gutul v. Mukasey*, 290 F.App'x 968, 969 (8th Cir. 2008); *Rios v. Holder*, No. 07-73953, 2010 WL 1474494 (9th Cir. Apr. 14, 2010).

Our determination here expressly adopts what has been implicitly assumed since the enactment of the REAL ID Act. Considering the language and design of the statute, congressional intent to create a uniform standard, and the inherent difficulties in applying different burden of proof standards on the subissue of the persecutor's motive, we conclude that an applicant for withholding of removal must demonstrate that race, religion, nationality, membership in a particular social group, or political opinion was or will be "at least one central reason" for the claimed persecution.

Furthermore, even if we were unable to discern a clear congressional intent based on the lack of express statutory language making the "one central reason" standard applicable to the withholding of removal provision, we would reach the same result. Our application of the "one central reason" standard to withholding of removal claims represents at a minimum a "reasonable choice within a gap left open by Congress." *Chevron, U.S.A., Inc., v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 866 (1984). Thus, assuming that the statutory language gap makes the statute ambiguous, we would adopt this approach as a matter within our adjudicative authority and administrative judgment. *See id.* at 843-44; *see also Negusie v. Holder*, 129 S. Ct. at 1167; *INS v. Orlando Ventura*, 537 U.S. at 16-17.

## C. Application of the REAL ID Act Amendment

At the outset, we note that only withholding of removal is before us. The respondent does not challenge his ineligibility for asylum based on his untimely filing. *See* section 208(a)(2)(B) of the Act. Nor does he assert any

arguments to convince us that he is entitled to protection under the Convention Against Torture. Rather, the respondent argues that, assuming he must demonstrate that race, religion, nationality, membership in a particular social group, or political opinion will be "at least one central reason" for future persecution, he has met his burden based on membership in a particular social group, namely, public opponents of police violence and corruption in Brazil, and on his political opinion.

The threats that the respondent received were of a personal or retaliatory nature and were not because of any politically held or imputed opinion or because of his membership in any particular social group. As concerns the three incidents with which the respondent was associated, he is unable to demonstrate that political opinion or his membership in a particular social group is at least one central reason for any feared persecution. It is not necessary to determine whether the respondent's articulated particular social group is valid because the respondent has not shown that any persecution was or would be on account of his membership in that group. The respondent was employed as a driver and confidant by a businessman who was also a politician. When the employer found out about the respondent's casual discussions or, as the Immigration Judge characterized them, his "talking behind his employer's back and criticizing him," the respondent's employment was terminated. He had problems not on account of a protected basis, but because his employer wanted retribution for his comments. The fact that the respondent's employer happened to be a politician is merely incidental in this case. *Molina-Morales v. INS*, 237 F.3d 1048, 1052 (9th Cir. 2001).

Also, the police officers threatened the respondent not because of his political opinion or his membership in a particular social group, but because he had interfered with their private money-making scheme. Similarly, the respondent did not seek to expose police corruption because of any political opinion, but rather to avoid being harmed by the two officers. The record does not demonstrate that the officers were interested in other than personal retribution. Moreover, as previously discussed, the officers were disciplined and suspended. The officers' scheme represents "aberrational" conduct by individuals, not systemic government-sanctioned corruption. *See Baghdasaryan v. Holder*, 592 F.3d 1018, 1024 (9th Cir. 2010). Finally, as we stated in our earlier decision, the respondent's assistance of American law enforcement has no relation to police corruption.

The respondent has not produced "evidence, either direct or circumstantial, from which it is reasonable to believe that [any] harm . . . would be motivated [even] in part by an actual or imputed protected ground." *Matter of J-B-N- & S-M-*, 24 I&N Dec. at 211 (citing *Matter of S-P-*, 21 I&N Dec. 486, 494 (BIA 1996)). Thus he clearly has not shown that one of the protected grounds was "at least one central reason" for the incidents that he described. Because the remand from the Ninth Circuit was only for the purpose

of addressing the applicability of section 208(b)(1)(B)(i) of the Act to the respondent's claim for withholding of removal, we rely on our earlier decision and will not further address the specifics of this issue.

## III.  CONCLUSION

After consideration of the relevant statutory, legal, and legislative references in the proper context, we hold that an applicant for withholding of removal must demonstrate that race, religion, nationality, membership in a particular social group, or political opinion was or will be "at least one central reason" for the claimed persecution.  Although the respondent argues that he will be targeted because of political opinion or his membership in a particular social group, he is unable to demonstrate that he engaged in activity that is protected under the Act.  Thus, the respondent has not shown that a protected ground would be a reason for his fear of future persecution, let alone at least one central reason.  Therefore, he is not entitled to withholding of removal.  Accordingly, the respondent's appeal will be dismissed.

**ORDER:**  The appeal is dismissed.