17-687
*Jin v. Barr*

BIA
Vomacka, IJ
A087 980 955

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of May, two thousand nineteen.

PRESENT:
> ROSEMARY S. POOLER,
> BARRINGTON D. PARKER,
> RICHARD C. WESLEY,
> > *Circuit Judges.*

_____

CHUNHUA JIN,
> *Petitioner,*

v.                                                    17-687
                                                      NAC

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Mike P. Gao, Flushing, NY.

FOR RESPONDENT:          Chad A. Readler, Acting Assistant
                         Attorney General; Terri J.
                         Scadron, Assistant Director;
                         Anthony W. Norwood, Senior
                         Litigation Counsel, Office of

Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is GRANTED in part and DENIED in part.

Petitioner Chunhua Jin, a native and citizen of the People's Republic of China, seeks review of a February 10, 2017, decision of the BIA affirming a November 2, 2015, decision of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Chunhua Jin,* No. A 087 980 955 (B.I.A. Feb. 10, 2017), *aff'g* No. A 087 980 955 (Immig. Ct. N.Y. City Nov. 2, 2015). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decisions as modified by the BIA, i.e., without reaching the IJ's adverse credibility or corroboration rulings. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Because the BIA declined to

2

reach the IJ's adverse credibility finding, we assume that Jin testified credibly. *Mei Fun Wong v. Holder*, 633 F.3d 64, 68 (2d Cir. 2011).

## I. Asylum & Withholding of Removal

To obtain asylum or withholding of removal, Jin was required to "establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for" the claimed persecution. 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A); *Matter of C-T-L-*, 25 I. & N. Dec. 341, 348 (B.I.A. 2010) (extending the "one central reason" standard to withholding of removal). Jin argues that she was arrested based on her actual or imputed political opinion because of her role in organizing a shopkeepers' protest against the municipal government's rent increase. We agree that the agency should more fully consider the circumstances because, contrary to the agency's analysis, Jin was protesting a municipal government policy, not the corruption of a government official.

We have cautioned against adopting an "impoverished view of what political opinions are, especially in a country . . . where certain democratic rights have only a tenuous hold." *Osorio v. INS*, 18 F.3d 1017, 1030 (2d Cir. 1994). In *Osorio*, we concluded that a Guatemalan union leader, made out a political opinion claim: his union leadership and participation in strikes and protests "clearly evince[d] the political opinion that strikes by municipal workers should be legal and that workers should be given more rights," and the Guatemalan government viewed the union's activities as a political threat to the government's policies. *Id.* at 1029-31.

Jin's situation is distinguishable from the anti-corruption cases that the agency relied on because she opposed a government policy rather than individual officials' corrupt conduct. The municipal government's rent increase for shopkeepers in the Hunchun Light Industry Market cannot be said to be an "isolated, aberrational act[] of greed or malfeasance" in the same way that an official's unauthorized acts of extortion or embezzlement could be; the rent increase

4

was the city's official policy. *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 547-48 (2d Cir. 2005).

Further, even assuming that the anti-corruption case law applies, the fact that Jin opposed the rent increase out of economic self-interest does not necessarily foreclose her political opinion claim. *See id.* (holding that "opposition to endemic corruption or extortion, no less than opposition to other government policies or practices, may have a political dimension when it transcends mere self-protection and represents a challenge to the legitimacy or authority of the ruling regime.").

Jin's opposition to the government's rent increase transcended "mere self-protection" because she organized other shopkeepers and helped to lead a strike and protest with 70 to 80 participants that closed the market for eight hours. Additionally, Jin was arrested soon after the protest and the policewoman who interrogated her asked how she dare "go against the government," a statement that implies a perceived political component to Jin's actions. Although Jin organized only one protest against a specific government policy, the 2009 State Department country report in the record

5

documents China's harsh treatment of protesters (including those who protest economic and social policies) and supports Jin's argument that her conduct would be viewed as a political challenge to the local government's authority.

Accordingly, we remand for further consideration of asylum and withholding of removal. We express no opinion on the issues of credibility and corroboration that the BIA declined to reach.

## II.   CAT Relief

To be eligible for CAT relief, an applicant must show "that it is more likely than not" that she will be tortured in her country of removal. 8 C.F.R. § 1208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). The agency must consider "all evidence relevant to the possibility of future torture," including: "[e]vidence of past torture," evidence regarding the possibility of internal relocation, "[e]vidence of gross,

flagrant, or mass violations of human rights," and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3)(i)-(iv). However, evidence of past torture does not create a presumption that an applicant will be tortured in the future. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 185 (2d Cir. 2004).

Substantial evidence supports the agency's determination that Jin did not establish a likelihood of torture. Although Jin submitted a 2010 letter from her mother stating that the police were looking for her, she has not provided an updated letter or any other evidence to show that the police are still looking for her. The agency also reasonably concluded that Jin's ability to renew her passport and depart from China on her passport undermined her CAT claim, given an Australian government report reflecting that Chinese exit procedures generally prevent citizens with criminal convictions or ongoing criminal proceedings from obtaining passports or leaving the country.

For the foregoing reasons, the petition for review is GRANTED in part and REMANDED to the BIA as to asylum and

7

withholding of removal and DENIED in remaining part as to CAT relief.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe,
                                        Clerk of Court