NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0151n.06
No. 20-3631

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SEGUNDO MIGUEL-JOSE, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Mar 23, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS. |
| Respondent. | ) | |
| | ) | |
| | ) | |

BEFORE:     SUHRHEINRICH, SILER, and SUTTON, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  Segundo Miguel-Jose ("Miguel") challenges the Board of Immigration Appeals' decision denying his applications for withholding of removal and protection under the Convention Against Torture.  Because substantial evidence supports the Board's decision, we deny the petition for review.

**I.**

Miguel and his minor son Francisco, citizens of Guatemala, illegally entered the United States around December 1, 2015.[1]  The Department of Homeland Security initiated removal proceedings against them.  Miguel admitted the factual allegations and conceded his removability but applied for withholding of removal and Convention Against Torture protection.[2]

---

[1] Francisco was included in Miguel's proceedings below and was also ordered removed.  He is not a petitioner before this court, however.

[2] Miguel also admitted that his asylum application was untimely.

Miguel testified in support of his application. Prior to leaving Guatemala, Miguel lived with his wife and three children, ages eleven, six, and three at the time of the hearing, working as a farmer planting corn. AR 110, 143-44. Miguel stated that, from 2012 until 2015, gang members of the Mara 13 repeatedly threatened him because they wanted to recruit his oldest son, Leonardo, to transport drugs. Gangs like to use children as runners because they cannot be detained. AR 148-49, 151, 155. Miguel claimed that the gang threatened to kidnap his second child, Francisco, if he did not allow Leonardo to join the gang. AR 146. They came to the family's home five or six times. AR 145, 150. They mocked Miguel for being indigenous (Mayan), AR 147, but never physically harmed anyone. AR 150.

Miguel stated that he did not report any of these incidents because the police do not protect the people and are afraid of the gang members. AR 149. He claimed that, because they knew he had left Guatemala, if he returned the gang could kill him. AR 150. He felt that he could not live elsewhere in Guatemala because there are "gang members everywhere." *Id*.

Miguel identified two particular social groups giving rise to his persecution: his membership in a family "that is being targeted," AR 162, and being "a witness to a crime," AR 163-64.

The immigration judge denied Miguel's application. Although deeming Miguel credible, the immigration judge found that Miguel's account "did not provide much in the way of detail concerning any of the specific events" or the number of incidents between 2012 and 2015. AR 64. The immigration judge found that Miguel's corroborating evidence, which included reports on country conditions in Guatemala, a letter from his mother, who stated that the Mara 13 threatened her son "[m]any times," AR 309, and a letter from his town's mayor remarking that Miguel wanted to escape "a lot of violence and many thieves," AR 312, only partially corroborated" his story. AR

65. Most notably absent was information "about the particular police in his particular hometown, . . . or any other location in Guatemala to establish that the police or government is unable or unwilling to assist." *Id.*

The immigration judge determined that Miguel did not suffer past persecution because he was never physically harmed, and that he had not shown that the threats were pervasive. *Id.* And, because he was never harmed, the threats were not so imminent as to constitute an immediate threat of harm. *Id.*

The immigration judge also held that Miguel failed to establish that a government actor was involved or that the government was unable or unwilling to assist him. AR 66. Miguel never asked the local police or the mayor for assistance or offered evidence that doing so would have been futile. *Id.* Further, although the reports established that drug trafficking, corruption, and collusion in Guatemala are widespread, they also reported that in recent years the Guatemalan government has attempted to stop gang crime and police corruption. *Id.*

The immigration judge further concluded that Miguel failed to establish that his fear was based on any protected ground. Miguel offered no evidence that he was persecuted because of his race. AR 68. The judge noted that the gang members were motivated instead by the desire to recruit Miguel's son. *Id.* Membership in his family did not constitute a particular social group because any animus towards the family was simply a means to that end; it was not the reason for the persecution. *Id.* The immigration judge further rejected Miguel's particular social group of "witnesses to a crime," as inconsistent with Board precedent. AR 69. The immigration judge also determined that Miguel failed to establish that he could not safely relocate within Guatemala because he failed to provide evidence that the gang members, he encountered were transnational and could find him if he were to move. AR 70.

Finally, the immigration judge concluded that Miguel did not qualify for Convention Against Torture relief. Miguel did not claim to be afraid of any specific government actors and the failure to file a police report defeated an assertion that the police would turn a blind eye or acquiesce in any torture. *Id.* Thus, although "very sympathetic" to Miguel and his "understand[able] . . . love and concern for his children," *id.*, the immigration judge held that Miguel's applications must be denied for failure to meet the legal elements of the claims and ordered Miguel removed from the United States to Guatemala. AR 351.

The Board agreed that witnesses to crimes committed by Guatemalan gangs is not a cognizable social group[3] because it is not defined with particularity and is not socially distinct. AR 3-4. Citing its decision in *Matter of C-A-*, which held that confidential informants are not recognizable in society, the Board extrapolated that the larger group of witnesses could not be either. AR 4 (citing *Matter of* C-A-, 23 I. & N. Dec. 951, 960 (BIA), *aff'd, Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190 (11th Cir. 2006). AR 4. Furthermore, as the immigration judge found, Miguel never reported or testified about any crime. He was therefore merely a witness to a crime, and nothing in the record demonstrated that such a group was recognized by Guatemalan society as distinct. AR 4. The Board also found no clear error in the immigration judge's finding regarding the gang members' motivation for threatening Miguel and held that "[t]his finding precludes [Miguel] from establishing that a protected ground was *at least one central reason* for the harm he experienced and fears." *Id.* (emphasis added) (citing *Matter of C-T-L*, 25 I. & N. Dec. 341, 348 (BIA 2010). And it agreed with the immigration judge's finding that Miguel failed to establish that the Guatemalan authorities would not or could not protect him "for the reasons stated in [the immigration judge's] decision." AR 4-5. The Board therefore held that Miguel was not eligible

---

[3] Miguel did not challenge the immigration judge's rejection of his claim based on race or family membership. *See* AR 3.

for withholding of removal. AR 5. It also affirmed the immigration judge's denial of protection under the Convention Against Torture "for the reasons stated in that decision," namely that Miguel did not show that the police would acquiesce in any future torture. AR 5. It therefore dismissed the appeal. *Id.*

## II.

Miguel asks this court to find that the Board erred in denying both his withholding of removal claim and Convention Against Torture claim. We review the Board's decision and consider the immigration judge's reasoning to the extent the Board adopted it. *Al-Saka v. Sessions*, 904 F.3d 427, 430 (6th Cir. 2018). The Board's legal conclusions receive de novo scrutiny and factual findings are accepted "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Guerrero-Ramirez v. Wilkinson*, --- F. App'x ----, No. 20-3478, 2021 WL 242110, at *1 (6th Cir. Jan. 25, 2021) (quoting 8 U.S.C. § 1252(b)(4)(B)). A petition for review must be denied if substantial evidence supports the immigration judge's decision. *Id.*

## A.

The withholding of removal statute requires Miguel to prove that if he is removed, his "life or freedom would be threatened" "*because of*" a protected ground, such as race or membership in a protected social group. 8 U.S.C. § 1231(b)(3)(A) (emphasis added). The applicant must establish that the "particular social group" "is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Gil-Cerqueda v. Rosen*, --- F. App'x ----, No. 20-3396, 2021 WL 37542, at *2 (6th Cir. Jan. 5, 2021) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

First, Miguel argues that the Board misapplied the law by requiring him to demonstrate that his protected ground was "at least one central reason" for his persecution or fear of

persecution.[4] Miguel is correct. As we recently explained in *Guzman-Vazquez v. Barr*, although an asylum applicant must demonstrate that a protected ground was "one central reason" for his persecution, 8 U.S.C. § 1158(b)(1)(B)(i), a withholding applicant must show only that such ground was "a reason" for his persecution 8 U.S.C. § 1231(b)(3)(C). 959 F.3d 253, 270-74 (6th Cir. 2020). But that error is not a game changer in this case because Miguel failed to establish *any* nexus between the alleged harm and a protected ground, which is required by both statutes. *See Ajqui Gomez v. Barr*, 828 F. App'x 272, 277 (6th Cir. 2020) (holding that the Board's rejection of withholding claim for failure to show nexus in asylum context was harmless error because the alien did not meet the lower "a reason" standard for withholding claims).

The persecutor's motive is critical in determining nexus. *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992); *Guzman-Vazquez*, 959 F.3d at 253 (Murphy, J., dissenting). Here the Board adopted the immigration judge's finding "that the gang members threatened [Miguel] not to overcome a protected ground, but rather as a means to recruit family members into the gang." AR 4. Miguel challenges this finding by asserting that because he "knows the identities of the gang members . . . [and] he has witnessed their unlawful activities" the agency should have considered whether this fact was "a reason" for past persecution or feared future persecution. Miguel's own testimony undermines this assertion somewhat because he also stated he did not know where the gang members were from and that they did not look like him. AR 63, 146. And since the only gang activity he witnessed was crime in which he was the victim, *i.e.*, the crime and the motive were the same, this argument is circular. In any event, Miguel repeatedly stated that he was threatened because he refused to let his children join the gang to "sell drugs and commit their crimes." AR 144, 146, 152. Thus, substantial evidence supported the agency's finding that Miguel

---

[4] Although logically the nexus inquiry is unnecessary if membership in a protected statutory ground cannot be established, we follow the order of arguments in the manner presented in Miguel's brief.

was not threatened because of his race or membership in a protected social group but instead to recruit his son. *See Guzman-Vazquez,* 959 F.3d at 259. Absent a motive related to a protected ground, Miguel's claim fails. *Cf. Nicolas-Sebastian v. Barr*, 769 F. App'x 248, 252 (6th Cir. 2019) (holding that the Board did not err in holding that asylum seeker failed to carry his burden to show that his religious practice was "one central reason" why Guatemalan gang threatened him where evidence established merely that gang repeatedly threatened him because he did not want to join the group and never mentioned his religion). We can affirm the agency's denial of Miguel's withholding claim on this basis. *See Gonzalez-Hernandez v. Barr*, 821 F. App'x 465, 470 (6th Cir. 2020) (holding that applicants must demonstrate a nexus between persecution and membership in a cognizable group); *Nicolas-Sebastian*, 769 F. App'x at 253 (same).

Miguel's failure to establish a cognizable social group offers an independent ground for denial of his withholding of removal claim. *See Lucas-Lopez v. Barr*, 776 F. App'x 892, 896 (6th Cir. 2019). Miguel contends on appeal that the Board erred in comparing witnesses to crime to confidential informants, which the Board has held is not a cognizable particular social group, because the latter testify voluntarily and operate secretly. *See Matter of C-A-*, 23 I. & N. 951. This argument also misses the mark. To the Board, the operative fact was that "confidential informants are a subset of the larger group of witnesses." AR 4. The Board therefore logically concluded that the larger group of witnesses who do not report crimes or testify are even harder to delineate and recognize as socially distinct. Furthermore, as the agency noted, the record contains no evidence that the social group of witnesses to crime warrants unique status in Guatemalan society. *Cf. Matter of C-A-,* 23 I. & N. at 960-61 (noting that drug cartels "have directed harm against anyone and everyone perceived to have interfered with, or who might present a threat to, their criminal

enterprises"). Thus, the Board properly concluded that Miguel failed to identify a protected particular social group.

In short, because Miguel failed to establish (1) a nexus between his alleged harm and a statutorily protected ground, and (2) a particular social group, the Board's conclusion that he was not eligible for withholding of removal was supported by substantial evidence.

**B.**

To qualify for protection under the Convention Against Torture, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The torture must be severe mental or physical pain incurred "by or at the instigation of or with the acquiescence of a public official or other person acting in an official capacity." *Gil-Cerqueda*, 2021 WL 37542, at *4 (quoting *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 294-95 (6th Cir. 2016)). A nexus to a protected ground is not required, however. *Id.* "Rather, torture may be based on any reason so long as it is inflicted by, instigated by, or done with the consent or acquiescence of a government official or someone acting in official capacity." *Id.* (quoting *Hamida v. Gonzalez*, 478 F.3d 734, 741 (6th Cir. 2007)). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* (quoting 8 C.F.R. § 1208.18(a)(7)). The Convention Against Torture does not provide protection from wholly private actors. *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015).

Here the agency's conclusion is supported by the record. Neither Miguel nor his family were ever physically harmed by the gang. Miguel never once notified the authorities about the threats, so it is impossible to know how they would have responded to the call of duty. Nor did

Miguel offer evidence that the police were indifferent to the plight of other citizens targeted by the gangs. He also offered no proof that gang members were still looking for him. AR 67. We acknowledge, as did the Board, that the record contains evidence of country-wide drug trafficking, corruption, and police collusion with gangs, which the immigration judge took into consideration. AR 5; 66. But as the immigration judge explained, citing the Guatemala 2016 Human Rights Report, the record also demonstrated that in recent years the Guatemalan government has made strides toward eradicating these evil forces. AR 66; 279-80; 201 ("Guatemala has introduced vanguard measures to combat extortion rackets . . . ."); *id.* at197 (noting that Guatemala "has had two successive incorruptible attorneys general dedicated to fighting the country's systemic corruption"). *See Jose-Tomas v. Barr*, 822 F. App'x 354, 357-58 (6th Cir. 2020) (holding that substantial evidence supported agency's finding that the Guatemalan government is not unable or unwilling to control violence against indigenous women despite evidence in the record to the contrary because other evidence showed that Guatemala is taking steps to protect indigenous women from violence); *cf. Thayaparan v. Sessions*, 688 F. App'x 359, 367-69 (6th Cir. 2017) (remanding for further proceedings because the agency failed to give "reasoned consideration" to a plethora of country-conditions evidence detailing the minimal efforts by the Sri Lankan government to curb human rights abuses against ethnic Tamils).

In the end, the takeaway for the agency was Miguel's failure to file any police reports, which prevented him from establishing that the police "had any prior knowledge and then turned, or would turn, a willful blind eye" to any future torture. AR 5, 70. Substantial evidence supports the agency's decision that Miguel was not entitled to Convention Against Torture protection. AR 70.

## III.

We **DENY** the petition for review.