NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2488
_____

RENE ALONSO GALICIA-MARTINEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(No. A209-307-597)
Immigration Judge: Dinesh C. Verma
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 22, 2023

Before: RESTREPO, McKEE, and RENDELL, *Circuit Judges*

(Filed: November 21, 2023)
_____

**OPINION**[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

René Alonso Galicia Martínez,[1] a native and citizen of the Republic of El Salvador, petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing an appeal of his asylum and withholding-of-removal claims. Based on the administrative record before us, we will deny his petition.

**I**

A *pupusero* from the seaport of Acajutla, El Salvador, Mr. Galicia Martínez relocated to the United States in the fall of 2016 after he was subject to violence and attempted extortion at the hands of members of the transnational street gang known as Mara Salvatrucha 13 ("MS-13").[2] In the spring of 2016, an MS-13 clique sent children to Mr. Galicia Martínez's home and *pupuseria* to deliver cellular telephones through which a man identified as *el Diablo* informed him that "rent" was being imposed on his restaurant. Mr. Galicia Martínez protested, telling *el Diablo* that the fee he demanded was impossible given his limited financial means.

Unwilling to take no for an answer, *el Diablo* sent four affiliates to collect the money from Mr. Galicia Martínez in September of that year. The men kidnapped Mr.

---

[1] People from Spanish-speaking countries typically bear a single or composite given name (*nombre*) and two surnames (*apellidos*). The first surname is traditionally the father's first (*apellido paterno*), while the second surname is usually the mother's first (*apellido materno*). Because the convention in countries like El Salvador is to leave surnames unhyphenated, we will do so here.

[2] The pupusa, a thick flatbread usually stuffed with a few ingredients, is the national dish of El Salvador. A *pupusero/a* is a maker of pupusas, and a *pupuseria* is a street food establishment or restaurant that sells them.

Galicia Martínez, brought him to a location about twenty minutes away, and assaulted him at gunpoint for approximately thirty minutes. The gang members made themselves clear: Mr. Galicia Martínez would pay or they would kill him and harm his family. Upon release, Mr. Galicia Martínez immediately relocated to his aunt's home three hours away. He remained there for nearly a month before embarking on his journey to the United States, where he has since worked as a cook, dishwasher, and landscaper, and lived without incident for nearly seven years.

Mr. Galicia Martínez came to the attention of immigration authorities when law enforcement officers seeking his brother raided the home the two shared and arrested everyone inside. He was detained for a month. The Department of Homeland Security issued a Notice to Appear and commenced removal proceedings against him on January 5, 2017. Mr. Galicia Martínez conceded removability but requested relief based on asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). On February 27, 2019, an immigration judge denied his requests. Mr. Galicia Martínez appealed the decision to the BIA. On July 13, 2021, the BIA dismissed his appeal and determined that his CAT claim had been waived. Mr. Galicia Martínez now petitions for review of the BIA's dismissal of his appeal.

**II**

The BIA had jurisdiction pursuant to 8 U.S.C. § 1103 and 8 C.F.R. § 1003.1(b). We have jurisdiction for review of a final order of removal under 8 U.S.C. § 1252(a). *See Shehu v. Att'y Gen.*, 482 F.3d 652, 656 (3d Cir. 2007) (holding that "denial of a[n] . . . applicant's petition for asylum, withholding of removal, and relief under the CAT

3

constitutes 'a final order of removal' within the meaning of the statute, as the [applicant] is entitled to no further process before deportation"). Mr. Galicia Martínez filed a timely petition for review. *See* 8 U.S.C. § 1252(b)(1).

## III

The dispositive issue before us is whether the BIA erred in concluding that Mr. Galicia Martínez did not establish a legally cognizable particular social group ("PSG"). Whether a petitioner's proposed PSG is legally cognizable is a "mixed question of law and fact, since the ultimate legal question of cognizability depends on underlying factual questions concerning the group and the society of which it is a part." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 543 (3d Cir. 2018). Accordingly, we "review de novo the ultimate legal conclusion as to the existence of a [PSG]," but apply the highly deferential "substantial evidence" standard to underlying factual findings. *Id.* (quoting *Lukwago v. Ashcroft*, 329 F.3d 157, 167 (3d Cir. 2003)). "That means that factual 'determinations will be upheld if they are supported by reasonable, substantial, and probative evidence in the record considered as a whole.'" *Id.* (citing *Kang v. Att'y Gen.*, 611 F.3d 157, 164 (3d Cir. 2010)).

## IV

To qualify for asylum, Mr. Galicia Martínez bears the burden of establishing that he is a "refugee" under the Immigration and Nationality Act. 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B); *see also Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001). A "refugee" is a person who is "unable or unwilling" to return to their native country "because of persecution or a well-founded fear of persecution on account of race,

4

religion, nationality, *membership in a particular social group*, or political opinion." 8

U.S.C. § 1101(a)(42) (emphasis added). Thus, individuals like Mr. Galicia Martínez who

elect to tether their application to membership in a PSG must, as a threshold matter,

demonstrate that their proposed group is legally cognizable. *S.E.R.L.*, 894 F.3d at 543–

44. Such a group must be "(1) composed of members who share a common immutable

characteristic, (2) defined with particularity, and (3) socially distinct within the society in

question." *Id*. at 540 (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

However, establishing that a PSG exists does not put an end to the inquiry.

Individuals must also demonstrate that their membership in the PSG is "one central

reason" they were or will be targeted for persecution—that there is a nexus between their

membership in the PSG and their past or future persecution. 8 U.S.C. § 1158(b)(1)(B)(i);

*Matter of C–T–L–*, 25 I. & N. Dec. 341, 344–46 (BIA 2010) (extending the "one central

reason" standard from asylum cases to cases involving withholding of removal). "For a

protected characteristic to qualify as 'one central reason,' it must be an essential or

principal reason for the persecution . . . ." *Gonzalez-Posadas v. Att'y Gen*., 781 F.3d 677,

685 (3d Cir. 2015). Put otherwise, asylum or withholding of removal may not be granted

when the characteristic at issue "played only an incidental, tangential, or superficial role

in persecution." *Ndayshimiye v. Att'y Gen.*, 557 F.3d 124, 130 (3d Cir. 2009) (discussing

the text of the controlling statute). "Conflicts of a personal nature and isolated criminal

acts do not constitute persecution on account of a protected characteristic." *Gonzalez-*

*Posadas*, 781 F.3d at 685 (citing *Shehu*, 482 F.3d at 657 (concluding that no reasonable

fear of persecution existed when a gang targeted the applicant for economic gain and not

5

because of his political or family affiliation)); *see also Amanfi v. Ashcroft*, 328 F.3d 719, 727 (3d Cir. 2003) (finding no reasonable fear of religious persecution when past attacks were motivated by an interpersonal conflict and not by religious bigotry).

A family-based PSG can be a legitimate basis for an asylum or withholding-of-removal application. *See, e.g.*, *Hernandez Garmendia v. Att'y Gen. United States*, 28 F.4th 476, 483 n.4 (3d Cir. 2022); *Matter of L-E-A-*, 27 I. & N. Dec. 40, 42 (BIA 2017), *restored*, 28 I. & N. Dec. 304 (2021). Mr. Galicia Martínez tied the application before us to such a PSG.[3] He argues that the immigration judge improperly denied his application for relief because he supplied ample evidence of a nexus between his membership in a PSG—his family—and his past or future harm. But the immigration judge found, to the contrary, that the evidence showed that any future harm he might suffer would instead be for economic reasons. JA17 ("Based upon the totality of the evidence before the Court, the Court finds that the gang targeted the Respondent primarily for its own economic gain rather than on account of any familial ties he has.") (citing *Gonzalez Posadas*, 781 F.3d at 685). The BIA agreed and concluded that "the respondent ha[d] not shown a nexus between his past harm and future harm and a protected ground under the Act," because he could not show that his membership in his PSG was "at least one central reason" for his past or future harm. JA6. We likewise agree that the conclusion that Mr. Galicia Martínez has not established a nexus is supported by substantial evidence that his family

---

[3] Though submitted to the BIA, Mr. Galicia Martínez's "former small business owner" PSG is no longer at issue as Mr. Galicia Martínez did not challenge the immigration judge's finding that this group was not cognizable.

6

membership was not "an essential or principal reason for [his alleged] persecution." *Gonzalez-Posadas*, 781 F.3d at 685.

Indeed, the MS-13 members' interest in Mr. Galicia Martínez's family was merely incidental to, and in service of, their primary goal: obtaining "rent" from an allegedly prosperous *pupuseria*. Mr. Galicia Martínez made this clear himself in a hearing before the Immigration Court. When asked why the gang members threatened him, he responded, "[b]ecause I was a small business owner and they thought that it was going very well, and they wanted rent." A.R. 147. Mr. Galicia Martínez similarly claimed that *el Diablo* called again after initially being rebuffed to say "he was seeing that the business was doing better and that . . . he wanted rent." A.R. 151. And when queried by the immigration judge why gang members came to him in the first place, Mr. Galicia Martínez responded: "[w]ell they kept seeing that we kept buying chairs and were buying things for the restaurant, food to prepare to sell and that people were showing up to eat." A.R. 179. We agree that these threats read as isolated acts of attempted extortion, not persecution based on his family affiliation.

The conflict became personal when Mr. Galicia Martínez refused to acquiesce, but the evidence similarly does not suggest that it involved family-based animus. He reported that after he left El Salvador, "[w]hen they would see [his] siblings they would ask about [him] and they would send the threat that they wanted money . . . ." A.R. 168. These threats were directed at him, not at (or because of) his family. And when asked why the gang was not extorting money from the mother of his child, Mr. Galicia Martínez explained clearly that "the grudge was against me . . . ." A.R. 169. In reality, affiliates of

7

MS-13 have not harmed or extorted any members of Mr. Galicia Martínez's family, though they have had ample opportunity to do so.[4]

Accordingly, Mr. Galicia Martínez failed to establish that his family-based PSG "was or will be at least *one central reason* for [his persecution]." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added). MS-13's "bare desire for money," without more, does not reflect "hostility" against Mr. Galicia Martínez's family. *Shehu*, 482 F.3d at 657. And even if we could say that his family received direct threats from MS-13, "the fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim" of persecution on account of membership in a family-based PSG. *Matter of L-E-A-,* 27 I. & N. Dec. at 45. Thus, we conclude that while family may, in other contexts, be a legitimate particular social group, Mr. Galicia Martínez has not established a nexus between his familial identity and his alleged persecution. The BIA did not err in dismissing his appeal.

## V

For the foregoing reasons, we will deny Mr. Galicia Martínez's petition for review.

---

[4] If true, Mr. Galicia Martínez's report of a January 23, 2019 shooting at his partner's home is troubling. *See*, *e.g.*, A.R. 159 ("Some gang members showed up to my house over there and since they didn't find anybody they started shooting at the house trying to hurt someone."). Yet absent any clear and independent animus toward Mr. Galicia Martínez's family, shooting at what appears to be an exterior brick wall of his *unoccupied* home does little to suggest that the incident was anything more than an act of intimidation for pecuniary gain tied to the assailants' principal motive of extortion.