**19-3470-ag**
*Quituizaca v. Garland*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2021

ARGUED: JANUARY 18, 2022
DECIDED: NOVEMBER 1, 2022

No. 19-3470-ag

XAVIER PUCHA QUITUIZACA,
AKA MANUEL SANCHEZ RODRIGUEZ,
*Petitioner*,

*v.*

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,
*Respondent*.

————

On Petition for Review of a Final Decision
of the Board of Immigration Appeals.

————

Before: KEARSE, WALKER, and SULLIVAN, *Circuit Judges.*

————

Xavier Pucha Quituizaca petitions for review of a Board of
Immigration Appeals (BIA) decision affirming an Immigration
Judge's denial of his application for asylum and withholding of

removal under the Immigration and Nationality Act and protection under the Convention Against Torture (CAT). Quituizaca argues that the agency erred in denying his withholding of removal claim when it required that he demonstrate that his ethnicity was "at least one central reason" motivating his claimed persecution. He also challenges the BIA's denial of his asylum claim and its finding that he waived his CAT claim.

We hold that the withholding of removal statute is ambiguous as to the showing required to establish that a protected ground, such as ethnicity, motivated a persecutor. We also hold that the BIA's interpretation that the "one central reason" standard applies to withholding of removal claims is reasonable and thus entitled to deference. Because we find that the BIA's denial of Quituizaca's asylum and withholding claims are supported by substantial evidence and that Quituizaca waived his CAT claim, we **DENY** the petition.

Judge Sullivan concurs in Parts II and III and in the judgment, and files a separate concurring opinion as to Part I.

————

REBECCA RUTH PRESS, UnLocal, Inc. Community Immigration Legal Services, New York, NY (Xavier Pucha Quituizaca, pro se, Batavia, NY, *on the briefs*), *for Petitioner*.

MICHELE Y. F. SARKO, Office of Immigration Litigation (Timothy G. Hayes, Senior Litigation Counsel, *on the brief*), *for* Jeffrey Bossert Clark,

Acting Assistant Attorney General—Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Xavier Pucha Quituizaca petitions for review of a Board of Immigration Appeals (BIA) decision affirming an Immigration Judge's (IJ's) denial of his application for asylum and withholding of removal under the Immigration and Nationality Act (INA) and protection under the Convention Against Torture (CAT). Quituizaca argues that the agency erred in denying his withholding of removal claim when it required that he demonstrate that his ethnicity was "at least one central reason" motivating his claimed persecution. He also challenges the BIA's denial of his asylum claim and its finding that he waived his CAT claim.

We hold that the withholding of removal statute is ambiguous as to the showing required to establish that a protected ground, such as ethnicity, motivated a persecutor. We also hold that the BIA's interpretation that the "one central reason" standard applies to withholding of removal claims is reasonable and thus entitled to deference. Because we find that the BIA's denial of Quituizaca's asylum and withholding claims are supported by substantial evidence and that Quituizaca waived his CAT claim, we **DENY** the petition.

Judge Sullivan concurs in Parts II and III and in the judgment, and files a separate concurring opinion as to Part I.

BACKGROUND

Quituizaca, a native and citizen of Ecuador, entered the United States in 2006 unlawfully without inspection. In 2018, the government opened removal proceedings against him. Quituizaca appeared before an IJ and conceded removability but applied for asylum, withholding of removal, and protection under CAT, any of which would have provided him with relief from the removal proceedings.

The facts in this appeal are undisputed. Quituizaca's requests for relief arise out of allegations that he was twice attacked by the "Morocha Kigwas," a gang in Ecuador that he claims targeted him because of his indigenous Quechua ethnicity. At the hearing before the IJ, Quituizaca testified that in 2003, gang members boarded a bus "full of indigenous people" who were mostly of high school age.[1] The gang removed Quituizaca—then 18 years old and returning from work—from the bus, robbed him at knifepoint, and beat him when he tried to run away. When asked why he thought he was "singled out," Quituizaca explained that the gang routinely patrolled the buses.[2] He did not report the robbery to the police because he claimed that they did not "listen to indigenous people."[3]

Two years later, the same gang again confronted Quituizaca. This time, Quituizaca was with his brother and friends at a bus stop around midnight. The gang demanded their money, jackets, and shoes. Quituizaca complied, but one of his friends who resisted and tried to fight back was fatally stabbed by the gang's leader. The leader

---

[1] Certified Administrative Record ("CAR") 99–100.
[2] CAR 99.
[3] CAR 101.

then hit Quituizaca and threatened that Quituizaca and his family would meet the same fate as his friend if he reported anything to the police.[4]     Quituizaca did not report these events.     Although Quituizaca's asylum application and an affidavit from his brother state that the gang called Quituizaca "Indian" and "indigenous,"[5] Quituizaca did not testify that the gang used those words.  He also testified that he was robbed several more times after 2005.  When asked why he believed he had been targeted, he responded that it was because he had witnessed his friend's murder.

Following the hearing, the IJ denied all of Quituizaca's requests for relief.  The IJ rejected the asylum and withholding of removal claims because it found that Quituizaca's proposed social group— "individuals who refuse to pay gangs or [who are] subject to their will"—was "too diffuse."[6]     Quituizaca's CAT claim was denied because he failed to establish that he would likely be tortured by or with the acquiescence of the Ecuadorian government.

Quituizaca appealed to the BIA on the grounds that the IJ should have made an explicit credibility finding and addressed his ethnicity-based claims.  The BIA dismissed his appeal.  It found that the IJ failed to make an explicit credibility finding, but that the IJ assumed that Quituizaca was credible.  So, the BIA did not find that remand on this issue was necessary.  And although the BIA acknowledged that the IJ did not "sufficiently consider" Quituizaca's

---

[4] The BIA incorrectly recounted that Quituizaca was not harmed during the 2005 incident.  He testified before the IJ that he was kicked and struck in the head with a knife, and the BIA explicitly "assume[d] [Quituizaca]'s credibility for purposes of [its] decision."  CAR 4–5.

[5] CAR 247, 252, 344.

[6] CAR 57.

ethnicity-based claims, it did not remand on this basis either.[7]  The BIA upheld the IJ's dismissal because Quituizaca had not shown sufficient proof that his ethnicity was "one central reason" for the harm he suffered to support either his asylum or withholding claims. While the BIA acknowledged Quituizaca's belief that he was targeted because of his ethnicity, it concluded that the evidence demonstrated that the gang was motivated by a "criminal desire to obtain money and goods."[8]  Moreover, Quituizaca failed to show that his proposed social groups—"Quechua being persecuted by gangs in Ecuador" or "witness[es] to gang crime"—were "socially distinct and particular."[9] Finally, the BIA found that Quituizaca waived his CAT claim because he did not challenge the IJ's determination of that issue.  Quituizaca now petitions for review.

## DISCUSSION

Quituizaca advances three arguments on appeal.  He argues that the BIA applied the wrong legal standard to his withholding of removal claim.  He contends the BIA overlooked credible testimony in support of both his asylum and withholding claims.  And he disputes that he waived his CAT claim.

## I.     The Motive Standard for Withholding of Removal Claims

An alien who fears persecution in his native country may apply for withholding of removal or asylum to avoid removal.  If an applicant satisfies the eligibility requirements for withholding of removal, he is automatically entitled to that relief.  Asylum, by

---

[7] CAR 5.

[8] CAR 6.

[9] CAR 5.

contrast, is granted at the Attorney General's discretion, and involves a lower burden of proof compared to withholding of removal.[10]  Both forms of relief require the applicant to establish a nexus between a statutorily protected ground in the INA—race, religion, nationality, membership in a particular social group, or political opinion—and the feared persecution.[11]  A persecutor may be motivated, however, by both protected and unprotected grounds.  Before 2005, the INA did not supply a clear standard for analyzing these so-called "mixed motive" asylum and withholding claims.[12]  Section 1158(b)(1)(B)(i) of the REAL ID Act of 2005[13] has since codified that an asylum applicant must show that the protected ground is "at least one central reason" for the persecution.[14]

The REAL ID Act amendments do not expressly provide that § 1158(b)(1)(B)(i)'s "one central reason" motive language also applies to withholding of removal claims.  Section 1231(b)(3)(A), the general withholding of removal provision, prohibits the Attorney General from removing an alien "if the Attorney General decides that the alien's life or freedom would be threatened in that country *because of*

---

[10] Among other things, a person seeking asylum need only demonstrate "a well-founded fear of persecution," 8 U.S.C. § 1101(a)(42)(A), while withholding of removal requires a more "stringent" showing of a "clear probability" of persecution, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 443–44 (1987); *Y.C. v. Holder*, 741 F.3d 324, 333 (2d Cir. 2013).  For this reason, if an asylum applicant fails to show a well-founded fear of persecution, his application for withholding of removal will also necessarily fail.

[11] *See* 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A).

[12] *See In Re V-T-S-*, 21 I. & N. Dec. 792, 796 (BIA 1997) (applying the "on account of" language from 8 U.S.C. § 1101(a)(42)).

[13] Pub. L. No. 109-13, 119 Stat. 302, 303.

[14] 8 U.S.C. § 1158(b)(1)(B)(i).

the alien's race, religion, nationality, membership in a particular social group, or political opinion."[15]  The REAL ID Act did not amend this language.[16]  Instead, the Act amended the withholding statute to add § 1231(b)(3)(C) as follows:  "In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in [§ 1231(b)(3)(A)], the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title."[17]

The BIA dismissed Quituizaca's asylum and withholding claims because it found that he failed to meet his "burden of establishing that his ethnicity was one central reason that gang members robbed and attacked him."[18]  So doing, the BIA applied the asylum statute's "one central reason" standard to Quituizaca's withholding of removal claim.[19]  Quituizaca argues that § 1231(b)(3)(C) requires only that he show that his ethnicity was "a reason" for the persecution.  He contends that because that provision supplies a less onerous motive standard than the asylum statute, the BIA erred when it did not apply the withholding statute's plain text.

We are thus tasked with construing the withholding of removal provision.[20]  "[B]ecause the administration of [the INA] is entrusted

---

[15] 8 U.S.C. § 1231(b)(3)(A) (emphasis added).

[16] *See, e.g.*, *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004).

[17] 8 U.S.C. § 1231(b)(3)(C).

[18] CAR 6.

[19] This has been the BIA's practice at least since *Matter of C-T-L-*, 25 I. & N. Dec. 341 (BIA 2010).

[20] We have not yet addressed in a published opinion whether the "one central reason" standard applies to withholding claims.    In

to the BIA, our review follows the two-step process outlined in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)."[21]  If the statute is clear, we must carry out Congress's stated intent.  But if provisions in the INA are ambiguous, the BIA's interpretations of those provisions, if reasonable, are entitled to *Chevron* deference.[22]  We can conclude that the language is ambiguous only after "exhaust[ing] all the 'traditional tools' of construction."[23]  We divine Congress's intent using the "ordinary tools of statutory construction,"[24] including the "statutory text, structure, and purpose as reflected in [the statute's] legislative history."[25]  If we are left with ambiguity after such examination, then we consider whether the BIA's interpretation is reasonable.

---

unpublished—and thus non-precedential summary orders, *see* 2d Cir. R. 32.1.1(a)—we have cited favorably to *Matter of C-T-L-*.  Whether *Matter of C-T-L-* was correctly decided was not at issue in those cases.  Nor was it in dispute when we cited to it in the background section of a recent published decision.  *Singh v. Garland*, 11 F.4th 106, 114 (2021).

Outside of our circuit, the Third Circuit has adopted *Matter of C-T-L'*s reasoning, noting that the Real ID Act reflected "Congress's intent to eliminate the confusion and disparity inherent in the 'mixed motive' persecution tests in the context of both claims for asylum and claims for withholding of removal."  *Gonzalez-Posadas v. Attorney Gen. U.S.*, 781 F.3d 677, 685 n.6 (3d Cir. 2015) (quoting *Matter of C-T-L*, 25 I. & N. Dec. at 348). A year before the BIA issued *Matter of C-T-L-*, the Fifth Circuit interpreted the REAL ID Act to apply the "one central reason" standard to withholding claims.  *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009).

[21] *Matthews v. Barr*, 927 F.3d 606, 612 (2d Cir. 2019) (citation omitted).

[22] *Negusie v. Holder*, 555 U.S. 511, 516, 521 (2009).

[23] *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (quoting *Chevron*, 467 U.S. at 843 n.9).

[24] *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 296 (2013).

[25] *Catskill Mountains Chapter of Trout Unltd., Inc. v. EPA*, 846 F.3d 492, 512 (2d Cir. 2017).

A. <u>Chevron Step One</u>

The text of the withholding of removal statute is somewhat opaque as it pertains to motive. Section 1231(b)(3)(A) provides that the Attorney General may not remove an alien to a country if "the alien's life or freedom would be threatened in that country *because of* the alien's race, religion, nationality, membership in a particular social group, or political opinion."[26]

We begin with the text's plain meaning.[27] When there is no statutory definition of a term, "we consider the ordinary, common-sense meaning of the words."[28] Webster's Third New International Dictionary defines "because of" to mean "by reason of" or "on account of."[29] In its ordinary sense, then, "because of" requires some causal connection between the feared persecution and the statutorily protected grounds.

Plain meaning "does not turn solely on dictionary definitions"; it incorporates "the specific context in which that language is used, and the broader context of the statute as a whole."[30] For that reason, although "because of" is sometimes synonymous with "but-for" causation,[31] we doubt that interpretation applies in the immigration context. "But-for" causation would require that the withholding applicant show that the protected ground was the determinative

---

[26] 8 U.S.C. § 1231(b)(3)(A) (emphasis added).

[27] *Centurion v. Sessions*, 860 F.3d 69, 75 (2d Cir. 2017).

[28] *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (internal citation omitted).

[29] 1 Webster's Third New International Dictionary 194 (1966).

[30] *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021).

[31] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009).

reason he was persecuted.[32]  It is more than just noteworthy that we have held that the "plain meaning of the phrase 'persecution *on account of* [a protected ground]'"—synonymous with "because of"— "does not mean persecution *solely* on account of [the protected ground]."[33]  The INA has long accepted mixed-motive asylum and withholding of removal claims, and there has never been any indication from Congress that doing so violates the INA's text.[34]  In our view, the plain text does not clearly provide an answer to the proper motive standard beyond the obvious proposition that there must be some degree of causation.

Turning to the statutory context, we generally aim to interpret a statute "as a symmetrical and coherent regulatory scheme."[35] Applying the same motive standard to asylum and withholding claims promotes a harmonious reading of the INA.  To establish asylum eligibility, an applicant must be a "refugee," defined as any alien who has been persecuted or who has a well-founded fear of persecution "*on account of* race, religion, nationality, membership in a particular social group, or political opinion."[36]  Section 1158(b)(1)(B)(i) clarifies that, for asylum claims, "on account of" a

---

[32] *See, e.g.*, *id.* (holding the Age Discrimination in Employment Act of 1967 does not authorize mixed-motive age discrimination claims and that the plaintiff must prove that age was the "but-for" cause of the adverse action).

[33] *Osorio v. INS*, 18 F.3d 1017, 1028 (2d Cir. 1994) (first emphasis added).

[34] *Acharya v. Holder*, 761 F.3d 289, 298 (2d Cir. 2014) (noting that "mixed motives asylum claims continue to be viable, and the BIA has so held") (internal citation omitted); *see also In Re S-P-*, 21 I. & N. Dec. 486, 495 (BIA 1996).

[35] *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

[36] 8 U.S.C. § 1101(a)(42) (emphasis added).

protected ground means that the protected ground must be "one central reason" for the persecution. To qualify for withholding, an applicant must show persecution "because of" any of the five protected grounds. As noted above, "because of" and "on account of" are synonyms, and courts use them interchangeably when interpreting the INA.[37] Applying the "one central reason" standard to withholding claims would thus avoid an internal contradiction in the Act.[38]

On the other hand, as Quituizaca points out, Congress did not expressly incorporate the "one central reason" language into the withholding statute as it did in the asylum provision. The REAL ID Act also added language discussing the effect of corroborating evidence on an asylum applicant's burden of proof and the standard by which to judge an asylum applicant's credibility.[39] Congress then incorporated those two new provisions from the asylum statute— §§ 1158(b)(1)(B)(ii) and (iii), respectively—into § 1231(b)(3)(C) of the withholding statute. But Congress did not cross-reference § 1158(b)(1)(B)(i), which includes the "one central reason" standard, in the withholding statute. When "Congress has simultaneously chosen to amend one statute in one way and a second statute in another way, we normally assume the differences in language imply differences in meaning."[40] Because "[t]he absent provision cannot be

---

[37] *See, e.g., INS v. Elias-Zacarias*, 502 U.S. 478, 481, 483 (1992).

[38] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 180 (2012) ("[T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

[39] 8 U.S.C. §§ 1158(b)(1)(B)(ii), (iii).

[40] *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1018 (2020).

supplied by the courts,"[41] the omission suggests that Congress did not intend for the "one central reason" standard to apply to withholding claims.

We are not persuaded by the government's proposed reason for the omission. It suggests that § 1158(b)(1)(B)(i) was not cross-referenced because that section requires an asylum applicant to establish that he is a "refugee," which is a term of art in the asylum context, and not relevant for withholding claims. But, as at least one other circuit has noted, reference to an applicant's refugee status elsewhere in the asylum statute did not stop Congress from incorporating those provisions into the withholding statute.[42] Taken together, the foregoing suggests that the structure of the statute fails to shed additional light on the appropriate motive standard.

Quituizaca disagrees. He argues that Congress unambiguously made the burden lower for withholding applicants to establish motive than for asylum applicants. He relies on the amendment to the withholding statute in § 1231(b)(3)(C), which provides:

> In determining whether an alien has demonstrated that the alien's life or freedom would be threatened *for a reason* described in subparagraph (A) [i.e., race, religion, nationality, membership in a particular social group, or political opinion], the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner

---

[41] Scalia & Garner, Reading Law 94 (2012).

[42] *Guzman-Vazquez v. Barr*, 959 F.3d 253, 273 (6th Cir. 2020) (noting that 8 U.S.C. § 1158(b)(1)(B)(ii) also refers to an applicant's burden to "demonstrate that the applicant is a refugee").

described in clauses (ii) and (iii) of section
1158(b)(1)(B) of this title.[43]

Quituizaca maintains that he need only show that the protected
ground is "a reason" for the feared persecution.  He is not alone in
this interpretation—two sister circuits have endorsed it as the
unambiguous standard.[44]    We do not think, however, that
§ 1231(b)(3)(C) settles the issue.  To start, Quituizaca does not address
the phrase "because of" in § 1231(b)(3)(A) and his proposed standard
seemingly reads that language out of the withholding statute.  We are
disinclined to find statutory meaning to be unambiguous if doing so
requires us to ignore other words in the text of the statute.[45]

Moreover, Quituizaca's interpretation is not the most natural
reading of § 1231(b)(3)(C).    Section 1231(b)(3)(C) articulates the
burden of proof for a withholding applicant and the method by which
a trier of fact assesses the applicant's credibility.  The phrase "a
reason" in § 1231(b)(3)(C) appears as part of the prepositional phrase,
"for a reason described in subparagraph (A)."    The reasons in
subparagraph (A) are the statutorily protected grounds listed in
§ 1231(b)(3)(A).  The context suggests that the phrase functions as a
placeholder to avoid having to repeat the list of the five protected
grounds.  For example, we could alter the prepositional phrase to read
"as described in subparagraph (A)" without altering the subsection's
meaning.    At a minimum, we are not persuaded that Congress
unambiguously supplied a substantive motive standard in a

---

[43] 8 U.S.C. § 1231(b)(3)(C) (emphasis added).

[44] *Guzman-Vazquez*, 959 F.3d at 272; *Barajas-Romero v. Lynch*, 846 F.3d
351, 358–59 (9th Cir. 2017).

[45] *State St. Bank & Tr. Co. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003);
*see also* Scalia & Garner, Reading Law 174 (2012) (surplusage canon).

dependent clause.  Congress does not tend to "hide elephants in mouseholes."[46]

The plain text, structure, and context of the withholding statute do not clearly point to a motive standard for withholding claims. Having exhausted these avenues, we pause briefly to consider if Congress's intent is discernable from the legislative history.[47]  "We are generally reluctant to employ legislative history at step one of *Chevron* analysis . . . ."[48]  But "Congress's interpretative cues" may occasionally "speak directly or clearly to the point in dispute."[49]  That did not happen here.

At best, the House conference report explains that the proposed revisions in the REAL ID Act would provide a "uniform standard for assessing motivation" in "mixed motive" *asylum* cases "in keeping with decisions of reviewing courts."[50]  But the report is silent as to the motive standard for withholding of removal claims, including whether Congress intended to weigh motive in withholding and asylum claims differently—the precise issue here.

We thus conclude that the INA does not unambiguously provide the proper standard for assessing motive in withholding of removal claims and therefore we cannot resolve this question at step one of *Chevron*.

---

[46] *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

[47] *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007).

[48] *Catskill Mountains Chapter of Trout Unltd., Inc.*, 846 F.3d at 515 (internal citation omitted).

[49] *Mizrahi*, 492 F.3d at 173 (citing *Gen. Dynamic Land Sys., Inc. v. Cline*, 540 U.S. 581, 586 (2004)).

[50] H.R. Rep. No. 109-72, at 163 (2005) (Conf. Rep.).

Before we proceed to step two, we pause to address the concurrence's view that the statute's meaning is not only "plain" but requires a showing of "but-for" causation.[51] So doing, the concurrence introduces a new test that was not presented to us on appeal and that is more stringent than the "one central reason" standard pressed by the government.

The concurrence's approach would introduce further ambiguity into the INA, rather than clarify the statute. The concurrence offers no persuasive response to our point that plain meaning is also determined by the "broader context of the statute as a whole."[52] The phrases "on account of" and "because of" are used interchangeably in the INA and its implementing regulations.[53] Given that, we do not see how the concurrence sufficiently reconciles the INA's definition of the phrase "on account of" to mean "one central reason" in the asylum context," with an interpretation of its equivalent "because of" to mean "but for" when used instead in the withholding of removal statute.

---

[51] Concurrence at 2-3.

[52] *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion) (internal quotation marks omitted).

[53] *See INS v. Elias-Zacarias*, 502 U.S. 478, 481, 483 (1992); 8 U.S.C. § 1231(b)(3)(A) (prohibiting the Attorney General from removing an alien if "the alien's life or freedom would be threatened in that country *because of* the alien's race, religion, nationality, membership in a particular social group, or political opinion" (emphasis added); 8 C.F.R. § 1208.16(b) (requiring the applicant for withholding of removal to establish that his "life or freedom would be threatened in the proposed country of removal *on account of* race, religion, nationality, membership in a particular social group, or political opinion" (emphasis added)).

The concurrence relies on common interpretations of other statutes that the phrase "because of" equates to "but-for" causation. *See* Concurrence at 3. Claims of age discrimination , or that a credit report violated the Fair Credit Reporting Act, both cited by the concurrence as an example, require proof that age or the credit report, respectively, be the but-for cause of the adverse action.[54] The implication is that the adverse action has already happened and whatever evidence to establish but-for causation or refute it exists too. But the language of the withholding statute under the INA differs from those other provisions in a fundamental respect. A withholding applicant from a particular country must establish a "clear probability" that he *will be* persecuted if he returns there. An applicant need not have already suffered past persecution to establish eligibility for withholding. The applicant in effect is seeking to prevent the prospect of an adverse action—namely, the risk of future persecution. A but-for standard in this context would seemingly require the applicant have insight into the motivations of the hypothetical future persecutor that sufficiently removes any doubt that the persecutor would be motivated by anything else. At a minimum, the proof that can be marshalled to rectify past conduct appears to us distinct from that which would be needed to establish a persecutor's potential future conduct.

The concurrence also explains that the "but-for" requirement is consistent with the well-accepted proposition that a petitioner has a higher burden to establish eligibility for withholding of removal than for asylum. Nothing in our opinion calls into question the fact that the asylum applicant need only show a "well-founded fear of

---

[54] *See, e.g., Babb v. Wilkie*, 140 S. Ct. 1168, 1176 (2020) (citing *Gross v. FBL Fin. Srvs., Inc.*, 557 U.S. 167, 177 (2009)).

persecution," while an applicant seeking withholding of removal must demonstrate the higher standard of a "clear probability of persecution."[55]  If a petitioner cannot establish a well-founded fear to be eligible for asylum relief, he will necessarily be ineligible to obtain withholding too, regardless of the applicable motive standard.  *See Osorio*, 18 F.3d at 1032.  There is no reason for us to believe that Congress would have wanted to heighten the burden in withholding of removal claims even further by requiring "but-for" causation when establishing the likelihood of an occurrence that has yet to take place, which is what the withholding of removal provision necessitates.  While establishing eligibility for withholding remains a high bar, neither the text of the INA, its implementing regulations, nor our case law applying the same require that a withholding applicant have the benefit of a crystal ball to divine the future persecutor's motives with such clarity as the "but-for" standard demands.

## B.  Chevron Step Two

Our task at step two is to determine "whether the agency's answer is based on a permissible construction of the statute."[56]  We defer to the agency's interpretation as long as it is not "arbitrary or capricious in substance, or manifestly contrary to the statute."[57]  Here the BIA interprets § 1231(b)(3), governing withholding of removal claims, to include the "one central reason" standard.[58]  We find that, in doing so, the BIA provides a reasonable explanation to resolve the

---

[55] *Compare* 8 U.S.C. § 1101(a)(42)(A), *with Gao v. Barr*, 968 F.3d 137, 141 n.2 (2d Cir. 2020).

[56] *Chevron*, 467 U.S. at 843.

[57] *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 53 (2011).

[58] *Matter of C-T-L-*, 25 I. & N. Dec. at 350.

ambiguity, which relies on statutory interpretation principles and is supported by practical considerations and the agency's prior decisions.

Prior to the REAL ID Act's enactment, the BIA applied the same motive standard to asylum and withholding claims.[59] The BIA's current interpretation maintains this consistency absent clear congressional intent to the contrary. In such a situation, it is reasonable to "borrow[]" a motive standard that already appears in the INA and with which litigants, the BIA, and courts are already familiar.[60] Applying the "one central reason" standard to both asylum and withholding claims also reflects the textual similarities between the two statutes, which require that an applicant face persecution "on account of" or "because of" a protected trait, respectively. Plus, a universal motive standard aligns with our prior recognition that an applicant's "failure to demonstrate eligibility for asylum automatically leads to a denial of withholding of deportation."[61] For these reasons, the BIA's reasonable interpretation is entitled to deference. Accordingly, the BIA did not apply the incorrect legal standard when using the "one central reason" standard in assessing Quituizaca's application for withholding of removal.

---

[59] *See, e.g.*, *In Re V-T-S-*, 21 I. & N. Dec. at 796.

[60] *Martel v. Clair*, 565 U.S. 648, 660 (2012).

[61] *Carranza-Hernandez v. INS*, 12 F.3d 4, 7 (2d Cir. 1993).

## II.     Sufficient Evidence Supports the BIA's Conclusion that Quituizaca was Not Entitled to Asylum or Withholding of Removal

We turn now to whether substantial evidence supports the BIA's conclusion that Quituizaca failed to show that his Quechua ethnicity was one central reason for the harm he suffered.[62]

When, as here, the BIA issues its own opinion and does not adopt or simply supplement the IJ's analysis, we review the BIA's decision.[63] We review factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."[64]

---

[62] Although Quituizaca previously asserted membership in a particular social group as an alternative basis for asylum, he abandoned this claim in his petition. We thus consider it waived. *Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005).

We briefly address whether the BIA acted ultra vires in reaching Quituizaca's ethnicity-based claims, which it acknowledges the IJ did not "sufficiently consider." CAR 5. The BIA is prohibited from "engag[ing] in factfinding in the course of deciding cases." 8 C.F.R. § 1003.1(d)(3)(iv); *Weinong Lin v. Holder*, 763 F.3d 244, 247 (2d Cir. 2014) (noting that impermissible fact-finding "constitutes reversible error"). But the BIA relied on the IJ's findings, including crediting Quituizaca's testimony that "he believed that he was targeted because he was indigenous," to analyze Quituizaca's ethnicity-based claims. CAR 55. Moreover, we require petitioners to raise issues in their briefs, lest they waive such challenges. Quituizaca did not argue that the BIA engaged in its own factfinding; so, he has waived that argument. To the extent Quituizaca's counsel seemingly raised the issue at oral argument, it is "well established that arguments raised for the first time at oral argument are deemed 'waived.'" *Gao v. Barr*, 968 F.3d 137, 141 n.1 (2020) (citation omitted).

[63] *Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).

[64] 8 U.S.C. § 1252(b)(4)(B).

Questions of law and the BIA's application of law to undisputed facts are reviewed de novo.[65]  Because the BIA assumed that Quituizaca's testimony was credible, we make the same assumption.[66]

Substantial evidence supports the BIA's determination that Quituizaca did not carry his burden of proof as to his eligibility for either asylum or withholding of removal and that his ethnicity was not one central reason motivating the two robberies.  A protected ground cannot be "incidental" or "tangential" to another reason for harm.[67]  The BIA emphasized the lack of testimony to establish that Quituizaca was targeted because he is indigenous.  When specifically asked why he was "singled out" on the bus, Quituizaca responded simply that the gangs were "always . . . on the buses."[68]  Quituizaca's written statement reflects his understanding that the gang sought his money and property:  he describes defending himself from an "attack[] by a robber who wanted to steal [his] jacket."[69]

Contrary to Quituizaca's view, we do not agree that the BIA ignored evidence supporting his mixed-motive claim.  We do not demand that the BIA "expressly parse or refute on the record" each individual argument or piece of evidence that a petitioner offers.[70]  Although Quituizaca's asylum application noted that the gang members in 2003 called him "Indian," he did not mention this at all in his testimony.  Instead, when asked whether the gang said

---

[65] *Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

[66] *Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 196 (2d Cir. 2021).

[67] *In re J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007).

[68] CAR 99.

[69] CAR 249.

[70] *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006); *see also Morales v. INS*, 208 F.3d 323, 328 (1st Cir. 2000) (holding that the BIA need not discuss each piece of evidence in a decision).

anything, he responded only that they "told [him] to give them all the money."[71]  And while Quituizaca described the bus as being "full of indigenous people," he also testified that most of the people who "normally" took the buses were students.[72]  Quituizaca was not a student, and was instead returning from work.  He did not state that the gang targeted anyone else on the bus.  The BIA concluded that the evidence established the greater probability that the gang was motivated to harm him based on "incentives presented to ordinary criminals rather than . . . persecution."[73]  "[T]o obtain judicial reversal of the BIA's determination," Quituizaca needed to show "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution."[74] Quituizaca has not done that.[75]

Substantial evidence also supports the BIA's determination that Quituizaca did not demonstrate a link between his ethnicity and future persecution.[76]  Although Quituizaca's brother, who is in the United States, declared that the family "still received threatening messages,"[77] his mother, who continues to live in Ecuador, did not corroborate this statement.  She stated that her life would be at risk not because of threats or harm from the gang, but because if Quituizaca were to return, he would be unable to support her

---

[71] CAR 98–99.

[72] CAR 99–100.

[73] *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) (per curiam).

[74] *Elias-Zacarias*, 502 U.S. at 483–84.

[75] While the BIA arguably could have done more to explain why Quituizaca's evidence was insufficient, we affirm because the decision is still supported by substantial evidence.

[76] 8 U.S.C. § 1231(b)(3).

[77] CAR 252.

financially as he does from the United States. Nor was there any evidence of harm to other members of Quituizaca's family, including his daughter, in Ecuador. On this record, the BIA did not err in concluding that Quituizaca did not meet his burden to show fear of future harm based on his ethnicity.[78]

## III. Petitioner Waived His Challenge to the Denial of His CAT Claim

Finally, Quituizaca failed to administratively exhaust review of his CAT claim.[79] We require the "[p]etitioner to raise *issues* to the BIA in order to preserve them for judicial review."[80] Quituizaca's counseled brief to the BIA contended only that "the immigration judge erred in denying his applications for asylum and withholding of removal."[81] Mentioning the CAT claim in a prayer for relief is insufficient to "preserve a claim."[82] Similarly, the bare assertion that "police [do] not provide any protection"[83] did not suffice to challenge the IJ's denial of his CAT claim before the BIA. Thus, we will not disturb the BIA's dismissal based on its conclusion that Quituizaca waived his claim for CAT relief.

---

[78] 8 U.S.C. § 1229a(c)(4)(B); *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999).

[79] *Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir. 2006).

[80] *Foster v. INS*, 376 F.3d 75, 78 (2d Cir. 2004) (per curiam).

[81] CAR 31.

[82] *Foster*, 376 F.3d at 78.

[83] CAR 33.

## CONCLUSION

For the foregoing reasons, we DENY the petition for review.[84]

---

[84] Quituizaca previously filed a motion *pro se* to stay his removal proceedings pending a decision in this appeal. We now **DENY** the motion for a stay as moot.

RICHARD J. SULLIVAN, Circuit Judge, concurring in part and concurring in the judgment:

Like the Majority, I would deny Xavier Pucha Quituizaca's petition for review of the decision of the Board of Immigration Appeals (the "BIA"), but I would take a different path to that conclusion as it pertains to Pucha Quituizaca's application for withholding of removal. Accordingly, while I concur in the judgment of the Court and in the reasoning of Parts II and III of the Majority's Discussion section, I write separately as to Part I.

In the Agency proceedings under review, the BIA denied Pucha Quituizaca's claims for asylum and withholding of removal – both of which he based on his allegation that gang members in his native country of Ecuador had twice attacked him because of his indigenous Quechua ethnicity – finding that he had failed to establish that his ethnicity was "one central reason" for the attacks. Certified Admin. Record at 6. It is undisputed that, for purposes of his asylum claim, Pucha Quituizaca needed to show that his ethnicity was "at least one central reason" for his alleged persecution in Ecuador. 8 U.S.C. § 1158(b)(1)(B)(i). But the parties dispute whether, under 8 U.S.C. § 1231(b)(3), Pucha Quitizaca's withholding-of-removal claim is subject to a looser, more lenient standard for

showing a causal nexus between his claimed protected ground (ethnicity) and his claimed persecution (the gang attacks).  The government maintains that the "at least one central reason" standard specified in the asylum statute also applies to withholding-of-removal claims.  Government Br. at 19.  For his part, Pucha Quituizaca contends that the withholding-of-removal statute requires him merely to show that his ethnicity was "*a* reason" for the attacks.  Pucha Quituizaca Br. at 10 (emphasis added).  The Majority finds ambiguity as to whether the withholding-of-removal statute supports the government's or Pucha Quituizaca's proposed reading, but defers under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), to the Agency's "reasonable" interpretation as set forth in *Matter of C-T-L-*, 25 I. & N. Dec. 341 (BIA 2010).

I see no such ambiguity.  Rather, I find it plain that the withholding-of-removal statute – which provides that "the Attorney General may not remove an alien to a country if . . . the alien's life or freedom would be threatened in that country *because of* the alien's race [or other protected ground]," 8 U.S.C. § 1231(b)(3)(A) (emphasis added) – calls for a motive standard *at least as strict* as the asylum statute's "one central reason" standard, *id.* § 1158(b)(1)(B)(i).

2

As the Majority observes, "'because of' is sometimes synonymous with 'but-for' causation." Maj. Op. at 11 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). That strikes me as an understatement. In the very case cited by the Majority, the Supreme Court unequivocally stated that "the ordinary meaning of [a statute's] requirement that an [actor] took adverse action 'because of' [a specified factor] is that [the specified factor] was *the 'reason'* that the [actor] decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (emphasis added). Therefore, the Court held that to prevail "under the plain language of" such a statute, a litigant "must prove that [the specified factor] was *the 'but-for' cause* of the [relevant action]" – i.e., that the relevant action "would not have occurred without" the specified factor. *Id.* at 176–77 (emphasis added). Nothing in *Gross* suggests that the Supreme Court's reasoning was limited to the specific context of the age-based employment discrimination claims at issue there. On the contrary, the Court relied on common dictionaries, a well-known treatise on tort law, and the reasoning of cases interpreting similar language in the Racketeer Influenced and Corrupt Organizations Act and Fair Credit Reporting Act. *See id.* at 176–77. And in the years since *Gross*, the Supreme Court has only doubled down on its

"insistence on but-for causality" as the proper construction of "statutes using the term 'because of.'" *Burrage v. United States*, 571 U.S. 204, 213 (2014).

Although the Majority is quick to discount the ordinary meaning of the phrase, "because of," *see* Maj. Op. at 11, I do not think we are free to do so. *See, e.g.*, *Spadaro v. United States Customs & Border Prot.*, 978 F.3d 34, 46 (2d Cir. 2020) ("[W]hen the language of a statute is unambiguous, judicial inquiry is complete."); *United States v. Balde*, 943 F.3d 73, 81 (2d Cir. 2019) ("Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." (citation omitted)). Indeed, the Supreme Court has repeatedly taken pains to caution – "[w]ith regard to this very statutory scheme" – that the "ordinary and obvious meaning of the [text] is not to be lightly discounted," and to instruct that we must "consider[] ourselves bound to assume that the legislative purpose is expressed by the ordinary meaning of the words used." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

And even if we were free to do so, I would see no good reason to doubt that the phrase "because of," as used in the withholding-of-removal statute, requires the same but-for causation that it refers to in other federal statutes and at common law. The Majority expresses "doubt" that that meaning would "appl[y] in the

4

immigration context," since "'[b]ut-for' causation would require that the withholding applicant show that the protected ground was *the* reason he was persecuted." Maj. Op. at 11 (emphasis in original). Any suggestion of such a requirement, the Majority reasons, is foreclosed by our holding that "mixed[-]motives *asylum* claims continue to be viable" even in the wake of the REAL ID Act's 2005 amendments to the asylum provision in the Immigration and Nationality Act (the "INA"). *Acharya v. Holder*, 761 F.3d 289, 298 (2d Cir. 2014) (emphasis added; citation omitted).

But it does not follow, from the proposition that mixed-motives *asylum* claims are viable, that mixed-motives *withholding* claims must also be viable. We have long recognized that "the burden of proof necessary to establish a successful request for withholding of [removal] is higher than that necessary to establish a successful request for asylum," such that "an applicant who is not eligible for asylum is a fortiori ineligible for withholding of [removal]."[1] *Osorio v. INS*, 18 F.3d

---

[1] While the Majority acknowledges that the withholding statute's "clear probability of persecution" standard is stricter than the asylum statute's "well-founded fear of persecution" standard, they argue that they see "no reason . . . to believe that Congress would have wanted to heighten the burden in withholding of removal claims even further by requiring 'but-for' causation." Maj. Op. at 18. Yet as the Supreme Court explained in *Cardoza-Fonseca*, that argument "sorely fails because it does not take into account the fact that an alien who satisfies the applicable standard under [the asylum statute] does not have a *right* to remain in the United States; he or she is simply *eligible* for asylum, if the Attorney General, in his discretion, chooses to grant it. An alien satisfying [the withholding-of-removal statute]'s stricter standard, in contrast, is

5

1017, 1032 (2d Cir. 1994) (citing *Cardoza-Fonseca*, 480 U.S. at 446). Indeed, even the Ninth Circuit – whose precedents the Majority otherwise affords significant weight in finding the withholding-of-removal statute ambiguous, *see* Maj. Op. at 14 (citing *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–59 (9th Cir. 2017)) – has repeatedly acknowledged as much, *see, e.g.*, *Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006) (holding that since the "standard for withholding of removal is more stringent than the . . . standard governing asylum," it necessarily follows that when an alien "could not establish her eligibility for asylum, . . . she [is also] not eligible for withholding of removal"); *Villegas Sanchez v. Garland*, 990 F.3d 1173, 1183 (9th Cir. 2021) (holding same).

For all these reasons, I would hold that "the withholding-of-removal statute's use of 'because of' unambiguously requires a statutorily covered motive to be a but-for motive."[2] *Guzman-Vazquez v. Barr*, 959 F.3d 253, 288 (6th Cir. 2020)

---

*automatically* entitled to withholding of deportation." 480 U.S. at 443 (first and second emphases in original; third emphasis added).

[2] The Majority faults this Concurrence for "introduc[ing] a new test that was not presented to us on appeal and that is more stringent than the 'one central reason' standard pressed by the government." Maj. Op. at 16. But while I am mindful of the principle of party presentation, *see generally United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579–81 (2020), so too am I mindful of the even *more* fundamental principle that "[i]t is emphatically the province and duty of the judicial department to say what the law *is*," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added). As the Supreme Court has repeatedly instructed, *Marbury*'s axiomatic principle does not apply with any less force in cases where – as here – both parties happen to be wrong on the meaning of the law. Since "our judgments are precedents, . . . the proper

(Murphy, J., dissenting); *see generally id.* at 286–90 (Murphy, J., dissenting) (laying out fuller analysis for this point, with which I agree entirely). Consequently, I cannot agree with the Majority's "view" that "the plain text does not clearly provide an answer to the proper motive standard beyond the obvious proposition that there must be some degree of causation." Maj. Op. at 12.

But even if I *did* share the view that section 1231(b)(3)(A)'s plain text was effectively silent on the applicable motive or causation standard for withholding claims, I would find that the statutory structure and context eliminated any ambiguity about whether the text could bear the reading that *Pucha Quituizaca* suggests. Indeed, I would so conclude for the reasons that are stated – and stated well – in the Majority's own opinion. For starters, I agree with the Majority that we should interpret the INA "as a symmetrical and coherent regulatory scheme." *Id.* at 12 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)). And while I would maintain that the most "harmonious reading of the

administration of [public] law cannot be left merely to the stipulation of parties." *Young v. United States*, 315 U.S. 257, 259 (1942); *see also Utah Pub. Serv. Comm'n v. El Paso Nat. Gas Co.*, 395 U.S. 464, 467 (1969) ("The Department of Justice, . . . by stipulation or otherwise[,] has no authority to circumscribe the power of the courts . . . ."); *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 343 (2015) (Thomas, J., dissenting) ("[B]ecause . . . the ultimate meaning of a statute[] binds the public at large, it should not depend on the specific [position] presented [by a party] in a particular . . . case.").

INA," *id.*, would – in line with the INA's general scheme of imposing higher burdens on withholding applicants than on asylum applicants, *see Cardoza-Fonseca*, 480 U.S. at 446; *Osorio*, 18 F.3d at 1032 – apply a "*more* stringent" motive standard to withholding claims than to asylum claims, *Zehatye*, 453 F.3d at 1190 (emphasis added), the Majority makes clear that applying a *less* stringent motive standard to withholding claims than to asylum claims would be in active *disharmony* with the INA's statutory scheme. Likewise, I agree entirely with the Majority's rejection of – and its persuasive rationale for rejecting – Pucha Quituizaca's attempt to read significance into the appearance of the phrase "a reason" in section 1231(b)(3)(C). *See* Maj. Op. at 14–15.

What, then, is left to point in the other direction? First, apparently, is the bare fact that the Sixth and Ninth Circuits have "endorsed" Pucha Quituizaca's proposed reading. *Id.* at 14 & n.43 (citing *Guzman-Vazquez v. Barr*, 959 F.3d 253, 273 (6th Cir. 2020); *Barajas-Romero*, 846 F.3d at 358–59). But "our [C]ourt is not bound by the holdings of other federal courts of appeal." *Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 173–74 (2d Cir. 2012). Rather, our sister circuits' decisions are merely "persuasive" authority. *Charles W. v. Maul*, 214 F.3d 350, 357 (2d Cir. 2000). In other contexts, we have characterized persuasive authorities as

8

being "'entitled to respect' to the extent they have the 'power to persuade.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 105–06 (2d Cir. 2011) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (other citation omitted)); *see also* Thomas W. Merrill, *Judicial Deference to Executive Precedent*, 101 Yale L.J. 969, 1007–08 (1992) (likening the deference we afford to decisions of our sister circuits to the "power to persuade" standard under the *Skidmore* deference regime). In other words, the "[d]ecisions of . . . other courts of appeals" are "looked to only for their persuasive effect," but "[i]f they fail to persuade by the use of sound and logical reasoning, they will not be followed." *City Stores Co. v. Lerner Shops of D.C., Inc.*, 410 F.2d 1010, 1014 (D.C. Cir. 1969). And here, the Majority offers no explanation as to *why* the logic of *Guzman-Vazquez* or *Barajas-Romero* should persuade us to find ambiguity in an otherwise-unambiguous statute.

The only remaining reason why the withholding-of-removal statute might be susceptible to ambiguity, on the Majority's read, is that the government lacks a persuasive explanation for the omission of the phrase "one central reason" in section 1231(b)(3)(A). *See* Maj. Op. at 13–14. True, that might be good evidence that the withholding-of-removal statute embraces a motive standard *other than* the "one central reason" standard specified in the REAL ID Act's amendments to the

INA's corresponding asylum provision. 8 U.S.C. § 1158(b)(1)(B)(i). But "[w]here does that leave us?" *Guzman-Vazquez*, 959 F.3d at 289 (Murphy, J., dissenting). In my view, it simply leads us back to the question of whether the applicable motive standard for withholding claims requires a causal nexus that is tighter (i.e., "but-for") or looser (i.e., "a reason") than "one central reason." Again, the Majority has already explained persuasively why Pucha Quituizaca's argument in favor of the looser nexus is far from "the most natural reading of" the statute. Maj Op. at 15. And so, we "are left only with the plain meaning of 'because of,' which requires a [protected ground] to be a but-for reason for persecution," and with the inferences to be drawn from the INA's "longstanding" statutory structure under which "mandatory withholding-of-removal relief requires immigrants to meet a standard *higher* than the standard for discretionary asylum relief." *Guzman-Vazquez*, 959 F.3d at 289 (Murphy, J., dissenting) (emphasis in original).

For the reasons stated above, I cannot join the Majority's holding in Part I that section 1231(b)(3)(A) is sufficiently ambiguous as to permit the reading proposed by Pucha Quituizaca. *See* Maj. Op at 7–20. I would instead hold that, under the plain text and structure of the INA as amended by the REAL ID Act, it is unambiguous that an applicant for withholding of removal must show that his

10

claimed protected ground was (or will be) the but-for cause of his claimed persecution.[3]

Nevertheless, I agree with the starting point of the Majority's analysis in Part II: that to prevail on his underlying withholding claim, Pucha Quituizaca needed to show *at least* that his ethnicity was "one central reason" for the alleged gang attacks, and that to prevail on his petition for review, in turn, he would need to establish that when the BIA found that he had failed to make such a showing, its decision was unsupported by substantial evidence. I concur fully in the

---

[3] The Majority argues that applying a but-for motive or causation standard to withholding-of-removal claims would produce the absurd result of functionally "requir[ing] that a withholding applicant have the benefit of a crystal ball to divine the future persecutor's motives with such clarity as the 'but-for' standard demands." Maj. Op. at 19; *see generally id.* at 17–18. That argument misses the mark, as a matter of both statutory interpretation and immigration law. For starters, the canon against absurdity, "as is true of any guide to statutory construction, only serves as an aid for resolving an ambiguity; it is not to be used" – as the Majority would use it here – "to *beget* one." *Callanan v. United States*, 364 U.S. 587, 596 (1961) (emphasis added). And in any event, applying a but-for causation standard to the withholding statute's "clear probability" requirement would not, as the Majority speculates, "require the applicant have insight into the motivations of the hypothetical future persecutor that sufficiently removes any doubt that the persecutor would be motivated by anything else." Maj. Op. at 18. That is because "[t]he withholding standard . . . has no subjective component," and instead "is concerned only with *objective evidence* of future persecution" – such as the applicant's "demonstrat[ing] that he suffered past persecution based on one of the enumerated grounds," or that other individuals in the country of removal are currently suffering persecution "because of" their membership in the same "race, religion, nationality, . . . particular social group, or political [group]" as the applicant. *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (emphasis added; internal quotation marks omitted). I see nothing unnatural, either linguistically or logically, about saying that "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1231(b)(3)(A), must be the but for-cause of the past or current persecution cited by the applicant as "objective evidence" that *he, too*, would "more likely than not . . . suffer such future persecution if returned to the country of removal," *Scarlett*, 957 F.3d at 327–28 (citations omitted).

11

Majority's reasoning from that point forward, to the effect that the BIA's decision *was* supported by substantial evidence. *See id.* at 20–23. And because I also concur fully in the majority's holding in Part III, that Pucha Quituizaca waived his challenge to the Immigration Judge's denial of his claim for relief under the Convention Against Torture, *see id.* at 24, I ultimately concur in the Court's judgment denying his petition for review, *see id.*