Ramirez-Gomez v. Bondi

BIA
Nelson, IJ
A200 814 610

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of May, two thousand twenty-five.

PRESENT:
> JON O. NEWMAN,
> STEVEN J. MENASHI,
> MYRNA PÉREZ,
> > *Circuit Judges.*

_____

GERSON ANTULIO RAMIREZ-GOMEZ,
> *Petitioner,*

v.                                                            **21-6237**
                                                             **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**          Nicholas J. Mundy, Esq., Brooklyn, NY.

**FOR RESPONDENT:**          Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division; Anna Juarez, Senior Litigation Counsel; Kathryn McKinney, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Gerson Antulio Ramirez-Gomez, a native and citizen of Guatemala, seeks review of a March 23, 2021, decision of the BIA affirming a March 12, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Ramirez-Gomez,* No. A 200 814 610 (B.I.A. Mar. 23, 2021), *aff'g* No. A 200 814 610 (Immigr. Ct. N.Y.C. Mar. 12, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

"When the BIA issues an opinion, the opinion becomes the basis for judicial review of the decision of which the alien is complaining." *Bhagtana v. Garland*, 93 F.4th 592, 593 (2d Cir. 2023) (internal quotation marks omitted). While we have nevertheless reviewed both the IJ's and the BIA's decisions "for the sake of

2

completeness," *Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006), we have reviewed the IJ's decision as modified by the BIA, that is, without the adverse credibility determination on which the BIA declined to rely, *Xue Hong Yang v. DOJ*, 426 F.3d 520, 522 (2d Cir. 2005). "We review the [agency's] legal conclusions *de novo*, and its factual findings … under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (internal quotation marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## I.    Asylum and Withholding of Removal

To establish eligibility for asylum and withholding of removal, Ramirez-Gomez had to show that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for" his persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *see also id.* § 1231(b)(3)(A); *Quituizaca v. Garland*, 52 F.4th 103, 105-06 (2d Cir. 2022) (concluding that the "one central reason" standard applies to both asylum and withholding of removal). Ramirez-Gomez asserted that he was and would be persecuted on account of his membership in a particular social group; he therefore had the burden to establish that the group was cognizable by demonstrating that members share "a common

3

immutable characteristic," that the group is "defined with particularity," and that it is "socially distinct within the society in question." *Paloka v. Holder*, 762 F.3d 191, 196 (2d Cir. 2014) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)).

The agency did not err in concluding that Ramirez-Gomez failed to meet his burden to show that his proposed particular social group of "young men from indigenous locations in Guatemala recruited by gang members who resist such recruitment" was cognizable.[1] Social distinction requires that "society as a whole views [the] group as socially distinct." *Paloka*, 762 F.3d at 196. Ramirez-Gomez argues that the agency failed to consider the record and overlooked his testimony that he was viewed or treated differently because he was indigenous.[2] He does not provide a citation for such testimony, however, and our review of the record

---

[1] Because this determination is dispositive of asylum and withholding of removal, we do not reach the agency's alternative finding that Ramirez-Gomez failed to present evidence corroborating his past harm. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

[2] To the extent that Ramirez-Gomez argues that the agency failed to consider the record altogether, "we presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise," *Xiao Ji Chen v. DOJ*, 471 F.3d 315, 336 n.17 (2d Cir. 2006), and Ramirez-Gomez has not identified evidence that was not discussed and could have changed the outcome.

4

reveals that he did not testify about how indigenous people are treated or perceived in Guatemala. In any event, he did not claim that gang members targeted him because he was indigenous but rather because of his membership in a group of young men from indigenous regions who resist gang recruitment. Accordingly, that was the group he had to show was perceived as distinct by Guatemalan society.

Ramirez-Gomez further argues that the agency failed to consider whether the gang views this group as socially distinct. He asserts that he established that it does because gang members targeted him for being indigenous and for resisting recruitment. But Ramirez-Gomez never testified that the gang singled him out because he was indigenous, and even if he had, social distinction is about whether society views a group as distinct and requires more than evidence of the persecutors' perception. "While a persecutor's perception can be indicative of whether society views a group as distinct, a persecutor's perception alone is not enough, by itself, to establish a cognizable social group." *Quintanillla-Mejia v. Garland*, 3 F.4th 569, 588 (2d Cir. 2021) (internal quotation marks omitted); *see also Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary

5

criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the [Immigration and Nationality Act].").

Moreover, to the extent that the BIA affirmed the IJ's particularity finding, that finding was also correct.[3] Particularity requires that the group be "defined by characteristics that provide a clear benchmark for determining who falls within the group" and that membership not be "amorphous, overbroad, diffuse, or subjective." *Paloka*, 762 F.3d at 196 (quoting *M-E-V-G-*, 26 I. & N. Dec. at 239); *see also Ordonez Azmen v. Barr*, 965 F.3d 128, 135 (2d Cir. 2020) (explaining that particularity requires that members of the society in question "generally agree on who is included in the group") (quoting *Matter of W-G-R-*, 26 I. & N. Dec. 208, 221 (B.I.A. 2014)). Resistance to gang recruitment could encompass a broad range of conduct, and the record does not include evidence of consensus about what

---

[3] The IJ additionally concluded that the proposed group "may also not be immutable" because a person could leave an "indigenous location." Admin. R. 41. But while a particular social group of people "in" a particular area might not be immutable, a person cannot change where he is "from." *See Paloka*, 762 F.3d at 195 (explaining that an immutable characteristic is one that group members "either cannot change, or should not be required to change") (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (B.I.A. 1985)). Any such error would not be material because the failure to demonstrate either social distinction or particularity is dispositive. *See id.* at 196.

6

constitutes resistance or who is considered "young" in Guatemala. *Cf. Paloka*, 762 F.3d at 198-99 (remanding when, among other things, "the petitioner ha[d] refined the contours of her proposed social group during the proceedings to include a specific age range … that finds support in the evidence").

## II.   CAT

A CAT applicant "bears the burden of proving" that he "more likely than not would be tortured by, or with the acquiescence of, government officials acting in an official capacity." *Quintanilla-Mejia*, 3 F.4th at 592 (internal quotation marks omitted); *see also* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). [4] To establish acquiescence, the applicant must show that a "public official, prior to the activity constituting torture, [will] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) ("[T]orture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it."); *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007) ("A *private* actor's behavior can constitute torture

---

[4] Citations are to the regulations in place at the time of the IJ's decision.

under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene."). In evaluating a CAT claim, the agency considers "all evidence relevant to the possibility of torture," including past torture, the applicant's ability to relocate to a part of the country where he is not likely to be tortured, and "gross, flagrant or mass violations of human rights within the country of removal." 8 C.F.R. § 1208.16(c)(3).

Ramirez-Gomez argues that the agency failed to consider country conditions and evidence of police ineffectiveness and corruption, noting his statements that the police were stationed far from his home and usually took about a week to respond to reports. He also asserts that the agency overlooked his "horrible encounters" with the police, Petitioner's Br. 27, but it is not clear what he is referencing because he never alleged before the agency that he had interactions with the police. The country conditions evidence consists of a U.S. State Department report, which relates that there are problems with gang violence and that corruption is a human rights issue in Guatemala, but it also states that the Guatemalan government is taking measures to control suspected gang members. While some of this evidence could support a conclusion that the police would be

unable to protect Ramirez-Gomez, it does not compel a conclusion that a Guatemalan official is likely to acquiesce to his torture. *See Quintanilla-Mejia*, 3 F.4th at 592 (holding that when "the agency's conclusion finds support in record evidence," a petitioner "cannot secure CAT relief by pointing to conflicting evidence that might support—but not compel—a different conclusion"); *id.* at 593-94 (holding that the record did not compel a finding of acquiescence when the petitioner had not reported prior gang assaults and country conditions evidence showed both that gang violence persisted—including instances involving police misconduct—and that the government was taking steps to combat gang violence).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court